## PORTER *v.* BERWYN FUEL & FEED COMPANY, INC., ET AL.

[No. 521, September Term, 1965.]

630

*Decided December 12, 1966.*

The cause was submitted on the brief to HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

Submitted by *Henry E. Weil* for appellant.

Submitted by *Jerome Stanbury* and *William E. Brooke* for appellees.

FINAN, J., delivered the opinion of the Court.

On August 5, 1963, the appellee (plaintiff below) Berwyn Fuel and Feed Co., Inc. filed a declaration in assumpsit, motion for summary judgment and affidavit in support thereof in the Circuit Court for Montgomery County, claiming the sum of $1,748.47 due from Gilbert L. Porter, appellant, and Barbara S. Porter, husband and wife, (both defendants below) based upon three of the common counts (goods bargained and sold, work done and materials furnished and money found to be due on an account stated). The appellants filed a general issue plea and in their affidavit and amended affidavit, in opposition to appellee's motion for summary judgment alleged satisfaction of the claim by way of an assignment. On December 3, 1964, defendants filed a third-party claim against Elmer W. Sarbacher and Helen M. Sarbacher, his wife, alleging that the third-party defendants had ordered from appellee certain of the materials alleged by appellee to be the subject of the original suit without the consent of the defendants, and that the third-party defendants had assigned to defendants "the total sum of $4,200.33 from such sums as may become available" to the third-party defendants from "construction loan draws from the Citizens Building and Loan Association or from the sale of houses erected * * * in the subdivision known as 'Forest Park,' Prince George's County, Maryland," this being the assignment that defendants alleged they, in turn, assigned to appellee in full satisfaction of the original claim. Defendants' motion for a directed verdict at the close of appellee's case was denied and at the close of all

evidence the lower court directed verdicts in favor of defendant Barbara Porter and for appellee as against the remaining defendant, Gilbert Porter. Although it does not appear in the record, apparently a directed verdict was granted in favor of the third-party defendants. From entry of judgment against him in the amount of $1,748.47, defendant Gilbert Porter has taken this appeal.

Appellant, Porter, a drywall contractor, for some years prior to the suit, maintained an open account with appellee for building materials used by appellant in his business. When suit was filed on August 5, 1963, appellant's account showed a balance due of $1,748.47. From the exhibits and testimony adduced at trial it is apparent that some of the materials were not ordered by the appellant, but were ordered by Aaron Realty which was the prime contractor on the "Forest Park" job and were signed for by the third-party defendant Elmer Sarbacher. The record is not clear as to exactly what was the third-party defendants' relationship with Aaron Realty, but at the very least Elmer Sarbacher was an employee of Aaron Realty during the progress of the "Forest Park" job, that much being admitted by the third-party defendants' answers to interrogatories. Appellant's contention is that the Sarbachers were trading as Aaron Realty, and appellant, in his testimony, referred to Aaron Realty and the third-party defendants as a single entity.

Evidently, the third-party defendants became indebted to the appellant for work done and materials supplied for the "Forest Park" job, and as a consequence thereof executed an assignment of funds "as may become available * * * from construction loan draws * * * or from the sale of houses" constructed in the "Forest Park" subdivision. The date of this assignment does not appear in the record, nor is the assignment under seal. This assignment was reassigned shortly thereafter to the appellee and appellant testified that Mr. Mothershead, vice-president of appellee, accepted the assignment as payment of appellant's bill. Mr. Mothershead contradicted this when he testified: "This [the assignment] was given to me as a secondary security to make sure I got my money." He further testified: "We would hold this [the assignment] in our records to help him [appellant] to get his money from Aaron Realty. It was

more or less a secondary or another force or pressure to the general contractor to try and help Porter get his money." This assignment had not been admitted as evidence when the appellant moved for a directed verdict at the close of the plaintiff's case but was subsequently introduced by the appellant before he rested his case.

The record in this case presents a hodge-podge of confusion and the task of the Court has not been lessened by the action of counsel, for all parties, in submitting this matter on briefs and the record without the benefit of oral argument.

The appellant in his appeal raises five issues, only two of which merit discussion: (a) that the court erred in granting judgment for appellee in view of the fact that the testimony revealed that certain materials were not ordered by appellant nor were they delivered to him and (b) that the assignment of funds which appellant delivered to appellee operated as an accord and satisfaction of the claim.

## I

Contrary to the contention set forth in the appellant's brief the record shows from the appellant's testimony that, whether or not he ordered the materials in question, he nevertheless used them in the houses on which he was working in his capacity as a subcontractor. Appellant Gilbert L. Porter on direct examination testified:

THE COURT: Well, you mean that no one on this job ever accepted deliveries for you besides your men?

THE WITNESS: Well, let me see. There was a particular instance when payment was slow and on occasion he would go ahead and order the material.

THE COURT: Who would?

THE WITNESS: Mr. Sarbacher or Mr. Farrell, and we would put it on the job. There was many cases when the job wasn't ready for drywall and I would tell him this and he would go ahead and order anyway.

THE COURT: Ordered on your account?

THE WITNESS: Yes.

THE COURT: And you received the bills for it?

THE WITNESS: Yes.

THE COURT: What did you do then?

THE WITNESS: This was one of the reasons there is a dispute.

THE COURT: What did you do at the time when you received a bill for it?

THE WITNESS: *Well, we used the material in whatever house they were delivered in. There's no doubt we used it on the job. The fact of the matter is when I didn't have control when to order and when not to order because he was slow paying. How could I be responsible for it. I mean—*

THE COURT: *You will have to ask your lawyer that. In other words, all of the items in this exhibit, 1-A, you did use on the job but you say you did not order or did not receive it?*

THE WITNESS: *Right.*

THE COURT: But you used a part of it in your work?

THE WITNESS: Maybe not at that time, the particular time, but a week or so later. It's hard to say. (Emphasis supplied.)

The appellant's testimony was offered by him on his own behalf and is uncontradicted. His contentions that someone else ordered the material, or that delivery was made to some one other than himself becomes fatuous in view of the fact that the material was incorporated in the work he was doing as a subcontractor and it inured to his benefit.

## II

Counsel for appellant makes much of the fact that, through what he describes as interference of the trial judge, the assignment had not been admitted in evidence at the time he moved for a directed verdict at the close of the appellee's case, intimating that had the assignment been admitted in evidence the directed verdict would have, or should have been granted. The record shows that the assignment was eventually admitted in evidence and the Court fails to see where it helps the appellant's case.

There is conjecture as to just what is the true nature of this assignment, which is not under seal, which is undated and which reads as follows:

"FOR AND IN CONSIDERATION of the sum of One ($1.00) Dollar and other good and valuable

considerations we, the undersigned, hereby assign to Porter and Porter, Dry Wall Contractors, 9102 Piney Branch Road, Silver Spring, Maryland, the total sum of $4,200.33 *from such sums as may become available to us from construction loan draws from the Citizens Building and Loan Association or from the sale of houses erected* on Lots 4, 5, 6, 24 and 25 in the subdivision known as "FOREST PARK", Prince George's County, Maryland.

"This assignment of funds shall be due and payable in the amount of $840.07 from funds becoming available from the aforesaid sources in connection with the dwelling house constructed on each of the aforementioned lots.

Elmer W. Sarbacher<br>
Helen M. Sarbacher

"FOR AND IN CONSIDERATION of the sum of One ($1.00) Dollar and other good and valuable considerations we, the undersigned, hereby assign to Berwyn Fuel and Feed Company, Inc., 5107 Berwyn Road, College Park, Maryland, all of our right, title and interest in the above assignment.

Porter and Porter,<br>
By: Gilbert L. Porter"

(Emphasis supplied.)

The only way that this assignment could have served as an effective defense for the appellant, would have been if he proved that it was received or accepted by the appellee as an accord and satisfaction for the claim which the appellee had against him. This Court is of the opinion that he failed to do this.

At the time the assignment was made the balance due and owing by appellant to appellee was $4,200.33. At the time that suit was filed the balance of the account was $1,748.47. Mothershead, vice-president of appellee, testified that the assignment was not received as an accord and satisfaction between the parties but only as security for the account. Also, that armed with it, he was to help put pressure on Aaron Realty to pay the appellant what they owed him.

On the other hand the appellant's attorney argues "The only logical conclusion to which reasonable men could arrive is that the reassignment to Berwyn Fuel & Feed Co., Inc., was an Accord and Satisfaction of the claim against Gilbert Porter."

This is a rather brave statement when viewed in the light of the evidence. The action of the appellant in reassigning the assignment of Elmer W. Sarbacher and Helen M. Sarbacher to appellee and its delivery to appellee was a unilateral act on his own part and was of his own volition. His statement as to the connotation given the assignment, as an accord and satisfaction, is self-serving. There is no evidence that the appellee accepted it as such, except the appellant's testimony; while plaintiffs' exhibit #2, which is page 10706 of the appellee's customers' ledger (Accounts Receivable Ledger) demonstrates the fact that the appellee never treated the assignment as an accord and satisfaction. From the first entry of $26.78 on November 14, 1960 down to the last entry on August 25, 1961, the transactions between appellant and appellee were treated as an open account. On April 27, 1961 the balance reached $4,200.33 which is the amount shown on the face of the assignment and the account continued higher after that date. On May 19, 1961, it was $4,240.25, on June 26, 1961, $4,373.47, and on August 17, 1961, $4,539.31 which was the highest amount it reached. Subsequently, adjustments were made to bring it down to $1,748.47, some of which were transfers of credits from the Aaron Realty Co. account. However, the manner in which the Porter account was kept in the ledger is totally irreconcilable with the theory that the assignment of the $4,200.33 operated as an accord and satisfaction. This ledger entry was a record kept in the usual course of business and was admitted in evidence as such without any objection raised by counsel for the appellant. These entries were not made in contemplation of this suit and in fact were entered more than 18 months prior to the time that the account was turned over to an attorney for collection and, as may be seen from the testimony, appellant raised no objections to his billings:

> "Q. Mr. Mothershead, during the time of your monthly billings did you receive any complaints from Mr. Gilbert Porter?

"A. As to invoices and prices?
"Q. As to invoices and prices.
"A. No sir. I didn't."

The method by which the acount was kept until the time of referral for suit, was consonant with appellee's contention and Mothershead's testimony that the assignment had not been received as an accord and satisfaction, but only as security. Mr. Mothershead's testimony on this issue was as follows :

"Q. Was this assignment given to you?
"A. Porter and Porter by Gilbert L. Porter assigned this assignment to my company.
"Q. In what manner did you accept this?
"A. This was given to me as secondary security to make sure I got my money.
"Q. What was given in return, if anything?
"A. Nothing.
"Q. You did not relieve Mr. Porter of his debt?
"A. No, sir."

It is well settled in Maryland that an accord and satisfaction is "something other than *strict performance or payment*. It is doing that by the covenantor which the covenantee *accepts* in lieu of a performance of the terms of the covenant." (Emphasis supplied.) *Franklin Ins. Co. v. Hamill*, 5 Md. 170, 186 (1853).

This case is not too dissimilar to *Easter v. Humphrey*, 208 Md. 232, 117 A. 2d 886 (1955), wherein Judge Hammond (present Chief Judge) failed to find an accord and satisfaction between the parties and where the builder sent out a statement for extras a few days after the alleged accord and satisfaction took place.

Also, the very wording of the assignment would force a most strained construction if it were to be interpreted as an accord and satisfaction extinguishing the original debt. From its language one cannot be certain anything of value was assigned. The appellant was assigned money *"from such sums as may become available to us from construction loan draws* from the Citizens Building and Loan Association *or from the sale of houses erected * * *."* (Emphasis supplied.) What assurances

were there that, (a) the construction loan would be forthcoming; or (b) that the houses would be erected and sold; or (c) what is perhaps more important, there would be any equity from any of the aforementioned sources accruing to the benefit of the appellant or his creditors? Certainly it would be more consistent, under these circumstances, to view the assignment in the nature of a security agreement than as an accord and satisfaction. It would strain the credulity of this Court to hold otherwise. In *Berry v. Keith,* 100 A. 2d 831 (D. C. Mun. Ct. App. 1953), plaintiff brought suit to recover money deposited with defendant, a realtor, which was to have been used by defendant for a down payment on a home which ultimately was not purchased. The deposits amounted to a total of $865 of which $350 had been returned to defendant and plaintiff claimed $515 still due and owing. However, defendant claimed he had given his note in the amount of $600 as an accord and satisfaction of the original amount of $865 and hence there was not a balance due of $515. The plaintiff claimed she did not accept the note as an accord and satisfaction. The court said at p. 833:

> "But a vital element of this principle is missing, namely, a mutual agreement to take less than the amount of the original claim. *Moreover, there was no testimony that the parties intended the note to be in full settlement of Mrs. Keith's claim, nor does the note itself indicate that any such agreement existed.*
>
> * * *
>
> "As we noted above in setting out the factual background of the case, there was a conflict in the testimony of the two principal witnesses on almost every material point. Hence, the case resolved itself into a question of which of the parties the trial judge chose to believe." (Emphasis supplied.)

Likewise, in the instant case, not only is there a lack of mutuality as to the understanding as to what was intended by the assignment, a question of fact, *Rohr v. Anderson,* 51 Md. 205, 215 (1879); but as in *Keith, supra,* this case was heard by the court below without a jury and this Court cannot upset the findings of the trial judge on matters of evidence unless clearly er-

roneous. Rule 886 a. *August Wohlmuther, et ux. v. Mt. Airy Plumbing & Heating, Inc., et al.,* 244 Md. 321, 223 A. 2d 562.

Professor Williston in his treatise on contracts, 6 *Williston on Contracts* § 1847 (Rev. ed. 1938), states:

> "It is often extremely difficult to determine as matter of fact whether the parties agreed that the new promise should be itself the satisfaction of the original cause of action, or whether they contemplated the performance of the accord as the satisfaction. Unless there is clear evidence that the former was intended, the latter kind of agreement must be presumed, for it is not a probable inference that a creditor intends merely an exchange of his present cause of action for another. It is generally more reasonable to suppose that he bound himself to surrender his old rights only when the new contract of accord was performed."

Applying Professor Williston's theory to the case at bar, it may warrant the finding that an "accord" was in existence but certainly not any "satisfaction."

The appellant's remaining contention is that the appellee was compelled to follow the procedure outlined in Art. 8, § 4, Code (1957), which would have required him to sue the Sarbachers, as obligors under the assignment in the first instance, and only in the event of failure to obtain satisfaction from them, could he then sue the appellant as the obligee. This contention would only be material if an accord and satisfaction had been consummated. Even if such a situation prevailed, the recourse provided by Art. 8, § 4 would not be available to the appellant because it applies only to "any bond or other obligation under seal that has been assigned under hand and seal * * *" and neither the assignment nor the reassignment in this case bear any seal and are consequently vulnerable.

For the reasons set forth above the judgment of the lower court is affirmed.

*Judgment affirmed, with costs.*