SWANNIE B. CLARK ET AL. *v.* FLOYD L. ELZA ET UX.

[No. 91, September Term, 1978.]

*Decided October 23, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Richard A. Reid,* with whom were *Royston, Mueller, McLean & Reid* on the brief, for appellants.

*Paul Weinstein* for appellees.

ELDRIDGE, J., delivered the opinion of the Court.

This case presents the question of whether an executory oral agreement to settle a pending law suit may be raised as a defense to prevent a plaintiff from pursuing his original cause of action. It also presents the threshold issue of whether a trial court's refusal to enforce such a settlement agreement, where enforcement was sought in the underlying legal action, may be immediately appealed. We answer these questions in the affirmative.

As a result of injuries sustained in an automobile accident, the plaintiffs, Floyd L. Elza and his wife Myrtle E. Elza, filed suit in the Circuit Court for Baltimore County. They alleged that the defendants, Swannie B. Clark and Linda Sue Woodward, were legally responsible for their injuries. After the case was scheduled for trial, settlement negotiations ensued between the parties. A figure of $9,500.00 was verbally agreed upon; the trial judge was notified; and the case was removed from the trial calendar. The defendants forwarded a release and an order of satisfaction to the plaintiffs' attorney, and later sent a settlement draft to the plaintiffs' attorney. Thereafter, these papers were returned unexecuted with the statement that the $9,500.00 settlement was no longer adequate. The reason given for this change of mind was that on the day after the oral agreement, Mr. Elza had visited a new physician who informed him that his injuries were more extensive than he originally believed.

The plaintiffs then advised the court that they were no longer willing to go through with the settlement. In response, the defendants filed in the tort action a "Motion to Enforce Settlement." [1] At a hearing on the motion the plaintiffs argued that the settlement agreement was not binding on them because it was merely an executory accord, and could only be enforced upon satisfaction. The court observed that if the agreement were a substituted contract, as opposed to an executory accord, then it would be binding. Finding that the intention of the parties was to create an executory accord,

---

1. No issue has been raised by the parties concerning the particular procedural device utilized, and we therefore do not consider the matter.

the trial judge denied the motion of the defendants to enforce the settlement. The effect of this ruling was that trial upon the original tort action could proceed, notwithstanding the supposed settlement.

The defendants then took an appeal to the Court of Special Appeals, and the plaintiffs moved to dismiss the appeal. The Court of Special Appeals, in an unreported opinion, dismissed the appeal as premature because the trial court had not yet rendered a final judgment in the tort case. The court reasoned:

> "Here, the order . . . denying appellants' motion to enforce settlement did not deny appellees the means of further prosecuting their claims nor did it deny appellants the right to defend against those claims. In short, it did not settle and conclude the rights of the parties involved in the action and, thus, constituted an interlocutory order which is not appealable at this time."

The defendants petitioned this Court for a writ of certiorari, challenging the ruling that the case was not appealable and arguing that the purported settlement was effective. We granted the petition with respect to both issues.

### (1)

In this Court, both sides now agree that the decision of the circuit court was immediately appealable. Nevertheless, the consent of the litigants cannot vest jurisdiction in an appellate court. Recently in *Biro v. Schombert,* 285 Md. 290, 293, 402 A.2d 71 (1979), we observed:

> "The apparent acquiescence of the parties to the exercise of appellate jurisdiction . . . does not enable us to overlook the matter. As we stated in *Eastgate Associates v. Apper,* 276 Md. 698, 700-701, 350 A.2d 661 (1976): 'The jurisdiction of this Court, and the Court of Special Appeals, is determined by constitutional provisions, statutory provisions and rules; jurisdiction cannot be conferred by consent of

the parties.' Consequently, 'this Court will dismiss an appeal *sua sponte* when it notices that appellate jurisdiction is lacking.' *Smith v. Taylor,* 285 Md. 143, 400 A.2d 1130 (1979). *See* Rule 835 a 1. Similarly, where the Court of Special Appeals has entertained an appeal without having jurisdiction to do so, and the case is timely brought to our attention (such as by a petition for a writ of certiorari dealing with the merits of the appeal), we will issue a writ of certiorari and *sua sponte* consider the jurisdiction of the intermediate appellate court. *Eastgate Associates v. Apper, supra. See also Liberty Mut. Ins. Co. v. Wetzel,* 424 U.S. 737, 740, 96 S.Ct. 1202, 1204, 47 L.Ed.2d 435 (1976) ('Though neither party has questioned the jurisdiction of the Court of Appeals to entertain the appeal, we are obligated to do so on our own motion if a question thereto exists.')."

Consequently, we must make an independent determination as to the appealability of the trial court's decision.

With certain exceptions not here pertinent, a party may appeal only from a *final* judgment entered by a circuit court. *Peat & Co. v. Los Angeles Rams,* 284 Md. 86, 90-91, 394 A.2d 801 (1978), and cases there discussed; Maryland Code (1974), § 12-301 of the Courts and Judicial Proceedings Article. Certainly the order from which the instant appeal was taken was not final in the usual sense. It did not conclude the matter of the defendants' tort liability or prevent the defendants from defending the tort suit. *See Peat & Co. v. Los Angeles Rams, supra,* 284 Md. at 91; *United States Fire Ins. v. Schwartz,* 280 Md. 518, 521, 374 A.2d 896, 898 (1977). Consequently, for the order to be deemed final and appealable, it must come within the so-called "collateral order" doctrine originally set forth in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 545-547, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and applied by this Court in *Peat & Co. v. Los Angeles Rams, supra,* 284 Md. at 91-92; *Stewart v. State,* 282 Md. 557, 571, 386 A.2d 1206, 1213 (1978); and *Jolley v. State,* 282 Md. 353, 357, 384 A.2d 91, 94 (1978).

As recently pointed out by Judge Digges for the Court in the *Peat* case, 284 Md. at 92, the collateral order doctrine "is narrow in scope." An order must meet four requirements to be deemed "final" under this doctrine (*ibid.,* quoting from *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)):

> " '[T]he order must [(1)] conclusively determine the disputed question, [(2)] resolve an important issue [, (3) be] completely separate from the merits of the action, and [(4)] be effectively unreviewable on appeal from a final judgment.' "

In our view, these four criteria were satisfied, and the order was therefore final and appealable. First, the order finally resolved the disputed question of whether the plaintiffs were bound by their oral settlement agreement or were entitled to proceed with the tort action. Second, because a decision holding the settlement agreement to be enforceable would have the direct effect of terminating the litigation, it concerns "an important issue." Third, the questions bearing upon the enforceability of the settlement agreement have absolutely nothing to do with the merits of the tort cause of action. Thus, it is "completely separate" from the principal claim. Lastly, a final judgment on the merits of the underlying tort claim would render the ruling on the settlement agreement effectively unreviewable. One of the principal considerations in entering a pre-trial settlement agreement is the avoidance of the expense and inconvenience of a trial. If the defendants must proceed to a trial on the merits, this contractual benefit will be irretrievably lost. Regardless of the outcome of the trial or the outcome of an appeal after trial, the defendants will have been forced to go to trial and thus will have been deprived of a right under the contract if the contract should have been enforced. *Cf. Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Neal v. State,* 272 Md. 323, 322 A.2d 887 (1974), holding that a denial of a pre-trial motion to dismiss an indictment on double jeopardy grounds was final and therefore immediately appealable. *See also Jolley v. State, supra,* 282 Md. at 357.

214

(2)

As previously mentioned, the trial court refused to enforce the settlement agreement on the ground that it was an "executory accord" and not a "substitute contract." An executory accord is defined in 6 *Corbin on Contracts* § 1268, p. 71 (1962) as follows:

> "The term 'accord executory' is and always has been used to mean an agreement for the future discharge of an existing claim by a substituted performance. In order for an agreement to fall within this definition, it is the promised performance that is to discharge the existing claim, and not the promise to render such performance. Conversely, all agreements for a future discharge by a substituted performance are accords executory. It makes no difference whether or not the existing claim is liquidated or unliquidated, undisputed or disputed, except as these facts bear upon the sufficiency of the consideration for some promise in the new agreement. It makes no difference whether or not a suit has already been brought to enforce the original claim; or whether that claim arises out of an alleged tort or contract or quasi-contract. . . ."

*See also* J. Calamari and J. Perillo, *The Law of Contracts* § 21-4 (2d ed. 1977); *II Restatement of Contracts* § 417 (1932). *See generally* Gold, *Executory Accords,* 21 Boston U. L. Rev. 465 (1941); Comment, *Executory Accord, Accord and Satisfaction, and Novation — The Distinctions,* 26 Baylor L. Rev. 185 (1974). On the other hand, where the parties intend the new agreement itself to constitute a substitute for the prior claim, then this substituted contract immediately discharges the original claim. Under this latter type of arrangement, since the original claim is fully extinguished at the time the agreement is made, recovery may only be had upon the substituted contract. 6 *Corbin, supra,* pp. 74-75; Calamari and Perillo, *supra,* § 21-5.

It is often extremely difficult to determine the factual question of whether the parties to a compromise agreement

intended to create an executory accord or a substitute contract. However, unless the evidence demonstrates that the new agreement was designed to be a substitute for the original cause of action, it is presumed that the parties each intended to surrender their old rights and liabilities only upon performance of the new agreement. In other words, unless there is clear evidence to the contrary, an agreement to discharge a pre-existing claim will be regarded as an executory accord. *Porter v. Berwyn Fuel & Feed,* 244 Md. 629, 639, 224 A.2d 662 (1966); 15 *Williston on Contracts* § 1847 (3d ed. Jaeger 1972).

In light of the above-discussed principles, we agree with the trial court that the settlement agreement in this case was an executory accord and not a substitute contract. This conclusion is supported by the fact that a "release" was to be executed upon performance of the settlement contract. If a substitute contract were intended, the underlying tort cause of action would have been released when the agreement was made, notwithstanding the fact that performance had not yet been rendered. Holding in abeyance the release of the tort claim until the settlement agreement was performed would be inconsistent with the principle that a substitute contract serves to replace the initial claim. *See Warner v. Rossignol,* 513 F.2d 678, 682 (1st Cir. 1975). Furthermore, to the extent that there is any doubt, under this Court's decision in *Porter v. Berwyn Fuel & Feed, supra,* 244 Md. at 639, such doubt is resolved in favor of finding an executory accord.

After concluding that the oral settlement agreement was an executory accord, the circuit court permitted the plaintiffs to proceed to trial on their original cause of action. In so ruling, we believe that the circuit court erred as to the effect of an unexecuted accord.

It is true that several cases set forth the prinicple, adopted by the court below, that an executory accord is unenforceable and is no defense against a suit on the prior claim. *See* the discussion in 6 *Corbin on Contracts* §§ 1271-1275 (1962). *See also Addison v. Sommers,* 404 F.Supp. 715 (D. Md. 1975). Nevertheless the modern view, and in our judgment the

better view, is summarized by 6 *Corbin, supra,* § 1274, p. 104, as follows:

> "An accord executory does not in itself operate as a discharge of the previous claim, for the reason that it is not so intended or agreed. In nearly every case, however, the parties intend that the duty created by the previous transaction shall be suspended during the period fixed for performance of the accord. As long as the debtor has committed no breach of the accord, therefore, the creditor should be allowed to maintain no action for the enforcement of the prior claim. His right of action should be held to be suspended as the parties intended."

This is also the position adopted by the Restatement of Contracts, Vol. II, § 417 (1932):

> "§ 417. AN ACCORD; ITS EFFECT WHEN PERFORMED AND WHEN BROKEN.
>
> "Except as stated in §§ 142, 143 with reference to contracts for the benefit of third persons and as stated in § 418, the following rules are applicable to a contract to accept in the future a stated performance in satisfaction of an existing contractual duty, or a duty to make compensation:
>
> (a) Such a contract does not discharge the duty, but suspends the right to enforce it as long as there has been neither a breach of the contract nor a justification for the creditor in changing his position because of its prospective non-performance.
>
> (b) If such a contract is performed, the previously existing duty is discharged.
>
> (c) If the debtor breaks such a contract the creditor has alternative rights. He can enforce either the original duty or the subsequent contract. '
>
> (d) If the creditor breaks such a contract, the debtor's original duty is not discharged.

> The debtor acquires a right of action for damages for the breach, and if specific enforcement of that contract is practicable, he acquires an alternative right to the specific enforcement thereof. If the contract is enforced specifically, his original duty is discharged.

"*Comment:*

\* \* \*

> *b.* The rules governing the validity and effect of accord and satisfaction are applicable as well where the pre-existing duty arises from a tort as where it is based on contract."

Thus, an executory accord does not discharge the underlying claim until it is performed. Until there is a breach of the accord or a justifiable change of position based upon prospective non-performance, the original cause of action is suspended. As long as the "debtor" (*i.e.,* the defendant in a tort case) neither breaches the accord nor provides a reasonable basis for concluding that he will not perform, the "creditor" (*i.e.,* the plaintiff) has no right to enforce the underlying cause of action.

These principles have been applied to enforce executory accords under circumstances similar to those in the instant case. In *Warner v. Rossignol, supra,* 513 F.2d 678, a tort plaintiff in a bifurcated trial obtained a finding that the defendant was liable for the plaintiff's injuries. Prior to the jury trial on the issue of damages, the parties arrived at an oral settlement agreement; the court was notified; and the case removed from the trial calendar. After an initial delay in payment, the defendant tendered his check, which was refused by the plaintiff. The plaintiff then moved for a jury trial on the damages question, and, in response, the defendant filed a "motion to enforce the settlement." The trial court denied the plaintiff's motion, and granted that of the defendant. On appeal the plaintiff argued that the settlement was unenforceable because it was an unconsummated accord. The United States Court of Appeals rejected this contention,

characterizing it as "plainly wrong." Similarly, the court refused to accept the defendant's argument that the agreement was a "substitute contract" and not an executory accord. However, it went on to uphold the enforceability of the accord, declaring (513 F.2d at 683):

> "We hold, therefore, that while the agreement to compromise was binding and enforceable against a defaulting party — barring plaintiff from proceeding with his original action in breach of the agreement — plaintiff did not entirely relinquish his original cause upon entering into the agreement of compromise. The tort action would only be conclusively terminated when the $6,000 was paid against delivery of the releases and dismissal stipulation; until then it remained in abeyance and if defendant repudiated the settlement or committed a material breach of its terms, plaintiff could elect either to sue for $6,000 or to rescind and press forward upon the original cause." [2]

For other decisions to the same effect, *see, e.g., American Textile Machine Corp. v. United States,* 220 F.2d 584 (6th Cir. 1955); *Union Central Life Ins. Co. v. Imsland,* 91 F.2d 365 (8th Cir. 1937); *Peters v. Wallach,* 366 Mass. 622, 321 N.E.2d 806, 810 (1975); *Daly v. Chicago & North Western Railway Company,* 262 Minn. 351, 114 N.W.2d 682 (1962); *Trenton St. Ry. Co. v. Lawlor,* 74 N.J.Eq. 828, 71 A. 234 (1908); *Plant City Steel Corp. v. National Mach. Exch., Inc.,* 23 N.Y.2d 472, 245 N.E.2d 213 (1969); *Dobias v. White,* 239 N.C. 409, 80 S.E.2d 23 (1954), *on appeal after remand,* 240 N.C. 680, 83 S.E.2d 785 (1954); *Ladd v. General Ins. Co.,* 236 Or. 260, 387 P.2d 572 (1963).

Although the precise question here presented does not appear to have been discussed by this Court in any prior opinion, nevertheless our decisions seem to reflect the position of the above-cited cases, the Restatement, and

---

2. The court found it necessary to vacate and remand the case to the trial court for an evidentiary hearing on whether the defendant's delay in tendering payment justified the plaintiff's attempted withdrawal.

*Corbin. See, e.g., Chicora Fer. Co. v. Dunan,* 91 Md. 144, 46 A. 347 (1900).[3] Moreover, it is logical to hold that executory accords are enforceable. An executory accord is simply a type of bilateral contract. As long as the basic requirements to form a contract are present, there is no reason to treat such a settlement agreement differently than other contracts which are binding. This is consistent with the public policy dictating that courts should "look with favor upon the compromise or settlement of law suits in the interest of efficient and economical administration of justice and the lessening of friction and acrimony." *Chertkof v. Harry C. Weiskittel Co.,* 251 Md. 544, 550, 248 A.2d 373 (1968), *cert. denied,* 394 U.S. 974, 89 S.Ct. 1467, 22 L.Ed.2d 754 (1969).

In sum, the circuit court should not have permitted the plaintiffs to proceed with the underlying tort action in violation of their settlement agreement.[4]

> *Judgment of the Court of Special Appeals reversed and case remanded to that court with directions to reverse the judgment of the Circuit Court for Baltimore County and remand the case for further proceedings not inconsistent with this opinion.*
> *Respondents to pay costs.*

---

**3.** *Corbin, supra,* § 1274, p. 107, cites the *Chicora* decision as a "well-considered case" upholding the enforceability of executory accords.

**4.** The plaintiffs in their brief in this Court also argue that there was a mutual mistake concerning the extent of Mr. Elza's injuries, and that this justifies their avoidance of the settlement agreement. However, this issue was not encompassed in the petition for a writ of certiorari, was not raised by the plaintiffs in a cross-petition for a writ of certiorari, and therefore cannot be raised for the first time in their brief in this Court. Maryland Rule 813 a. Furthermore, even if it were properly before us, there would be no basis in this record for finding a mutual mistake of fact.