*Deborah Marie Pattison v. Todd Alan Pattison*, No. 186, September Term, 2021, Opinion by Graeff, J.

**APPEALABILITY — COLLATERAL ORDER DOCTRINE — MOTION TO ENFORCE SETTLEMENT AGREEMENT**

An order granting a motion to enforce a settlement agreement is not effectively unreviewable on appeal from a final judgment, and therefore, it is not appealable under the collateral order doctrine.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 186

September Term, 2021

_____


DEBORAH MARIE PATTISON

v.

TODD ALAN PATTISON

_____

Graeff,
Friedman,
Eyler, Deborah S.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Graeff, J.

_____

Filed: March 31, 2022


*Ripken, Laura S., J., did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

On May 24, 2019, appellee, Todd Alan Pattison ("Husband"), filed a Complaint for Absolute Divorce against appellant, Deborah Marie Pattison ("Wife"). In September 2020, after many settlement discussions, the parties signed a Voluntary Separation and Property Settlement Agreement (the "agreement").[1] On September 29, 2020, Husband filed an amended complaint, alleging that the parties executed a marital settlement agreement "resolving all issues of marital and non-marital property." On October 12, 2020, Wife filed an answer denying the existence of an agreement, stating that "she made a settlement offer to [Husband] on September 25, 2020 which was not timely accepted."

On October 16, 2020, Husband filed a Motion to Enforce Marital Settlement Agreement in the Circuit Court for Anne Arundel County, requesting that the court recognize and enforce the agreement and order Wife to pay legal fees "incurred in this matter." On March 17, 2021, after a hearing, the trial court issued its oral ruling granting Husband's Motion to Enforce.

On appeal, Wife presents several questions for this Court's review, which we have combined and rephrased slightly, as follows:

1. Did the trial court err in granting Husband's Motion to Enforce?

2. Did the trial court err or abuse its discretion in ordering Wife to pay Husband's attorney's fees?

For the reasons set forth below, we shall dismiss the appeal.

---

[1] The agreement is dated September 25, 2020, but Husband did not sign it until September 28, 2020.

## FACTUAL AND PROCEDURAL BACKGROUND

Husband and Wife were married in Annapolis, Maryland on April 9, 2016. In April 2019, the parties separated. On May 24, 2019, Husband filed a Complaint for Absolute Divorce, alleging adultery. At that time, Husband was self-employed, and Wife was employed full time.

On June 4, 2019, Wife filed a Counter-Claim for Absolute Divorce and other relief on the grounds of separation, constructive desertion, cruelty of conduct, and excessively vicious conduct. Thereafter, the parties filed multiple other pleadings, including amended and supplemental complaints. They engaged in extensive settlement negotiations.

Husband testified that, by September 24, 2020, he expected a finalized settlement agreement to be signed by Wife and presented to him for his signature. On September 25, 2020, counsel for Wife sent an agreement, signed by her and dated September 25, 2020, to Husband's counsel. Husband signed the agreement three days later, on September 28, 2020. Husband also executed two other documents, a promissory note and an unconditional guaranty that supports the payment of the monetary award under the agreement.

On September 29, 2020, following the return of the signed agreement and other documents, Husband filed a Supplemental Complaint alleging that the parties had reached an agreement that resolved all issues of marital and non-marital property. He requested that the parties "be granted an Absolute divorce on the ground of Mutual Consent."

2

On October 12, 2020, Wife filed an answer to the supplemental complaint, denying that the parties had reached an agreement. She stated that "she made a settlement offer to [Husband] on September 25, 2020[,] which was not timely accepted, and that the signed Marital Settlement Agreement is a nullity." Wife alleged that she delivered the agreement to Husband's counsel, along with a letter stating that the agreement was conditioned on Husband's execution of the agreement and promissory note on the same day, September 25, 2020.

On October 16, 2020, Husband filed a Motion to Enforce Marital Settlement Agreement (the "Motion to Enforce"). He stated that the agreement was "valid and enforceable," and Wife's position that the agreement was subject to a time condition was "frivolous, baseless, without merit, and [] filed in bad faith." Husband requested that the court enforce the agreement and order Wife to pay his legal fees in connection with the Motion to Enforce.

On February 19, 2021, Wife, represented by her new attorney, filed two pleadings: a Motion to Set Aside Marital Settlement Agreement (the "Motion to Set Aside") and a Response to Motion to Enforce Marital Settlement Agreement. Wife presented three arguments: (1) there was no binding agreement because Wife's offer to settle was conditioned on Husband's execution of the document on September 25, 2020, which did not occur; (2) even if there was a valid contract, it must be set aside because the terms were

3

unconscionable; and (3) the agreement should be set aside because it was a result of fraud, coercion or undue influence.[2]

Husband filed a Motion to Strike Wife's Response to his Motion to Enforce. He also filed a Motion for Attorney's Fees, requesting that the court order Wife to reimburse him for attorney's fees that he incurred in relation to enforcement of the agreement. On March 5, 2021, Wife filed a response, requesting that the court deny the Motion for Attorney's Fees.

On March 16, 2021, the court held a hearing on the motions, beginning with the Motion to Enforce. Husband's counsel began by discussing the lengthy settlement negotiations. He stated in an email sent at 3:51 p.m. on September 25, 2020, that counsel for Wife attached a settlement package, including a letter stating that the agreement was "conditioned" on Husband signing it. Counsel argued that the parties executed a valid settlement agreement, which was signed by both parties. He characterized the language of the letter as ambiguous, and it was not a clear, enforceable condition that the agreement must be accepted by a certain date, particularly when there was language that another document needed to be signed by September 28, 2020. Counsel argued that, even if there was such a condition, it was an unreasonable or impermissible condition, given that

---

[2] After the court granted the Motion to Enforce, counsel for Wife withdrew the Motion to Set Aside due to scheduling concerns.

counsel's office had limited personnel due to COVID and Husband was unable to sign that day.[3]

In her opening statement, counsel for Wife argued that there was no agreement, and therefore, Husband could not be granted a divorce under the Third Supplemental Complaint, which alleged mutual consent. Counsel stated that the letter that was hand-delivered and emailed to Husband's counsel on September 25, 2020, stated: "This agreement is delivered to you in settlement of the parties' outstanding disputes on the condition that the agreement and note be executed by [Husband] today," with the word "today" underlined. Counsel argued that the guaranty could be signed on Monday, but it was clear that the agreement needed to be signed by Husband that day, which was not done, and therefore there was no contract.

Both Husband and Wife testified regarding the events leading up to the agreement and the agreement itself. During Husband's direct testimony, his counsel attempted to admit into evidence letters of settlement discussions between himself and Wife's former counsel. Wife's counsel objected on hearsay grounds, stating that Wife's former counsel was the author of the letters and would need to be present to testify to their contents. She further argued that the letters were irrelevant and inadmissible settlement discussions. Husband's counsel responded that the letters were relevant because they spoke to the formation of the agreement, and they supported Husband's alternative theory of the

---

[3] Counsel also argued that there had been an agreement by September 23, where Wife accepted the terms offered by Husband, with minor issues still being resolved after that. The emails reflecting that, however, were not admitted into evidence, so that argument is not presented on appeal.

5

formation of an executory agreement. With respect to hearsay, counsel argued that there were no hearsay implications. The court sustained the objections to the admission of the letters on hearsay grounds.

Husband testified that, by September 22, 2020, several issues had been resolved during the settlement negotiations. He listed the terms to which the parties had agreed, as set forth in a draft agreement proposal exchanged on September 22. Those terms remained unchanged, and no counteroffer, revocation, or expiration date was communicated. On September 23, 2020, he received an updated agreement with revisions. He believed this included final terms of the divorce settlement, but there remained issues relating to the promissory note and guaranty that still needed to be negotiated. At that time, there was no indication of any condition to execution of the agreement.

Husband then testified regarding the executed agreement. He received an email containing the agreement on Friday, September 25, 2020. He knew that he did not get it before 5:00 p.m. because he had COVID at the time and slept from noon until 5:00 p.m. He did not sign an original of the document until he received it on September 28, 2020. The physical copy contained Wife's notarized signature. In addition to signing the agreement on September 28, Husband also signed the promissory note and the guaranty. Husband stated that the agreement did not contain any deadline to execute the agreement, and at the time he signed it, he believed the document set forth the agreement reached by the parties, and he understood that he was bound by the agreement.

On cross-examination, Husband admitted that, on September 24, 2020, he was expecting an agreement, signed by Wife, to be presented to him for his signature. He also

6

was aware, from emails sent on September 25, 2020, that Wife's counsel notified his counsel that a copy of the agreement signed by Wife, the promissory note and the guaranty would be delivered to Husband's counsel that day.

Husband testified that a letter was attached to the email from Wife's counsel on September 25. He agreed that the letter stated: "This agreement is delivered to you in settlement of the parties' outstanding disputes on condition that the agreement and the note be executed by [Husband] today." He stated, however, that he did not understand the letter to mean that there was a condition that he sign the agreement and promissory note on September 25. Rather, he believed that the letter meant that all the documents (the agreement, promissory note, and guaranty) needed to be executed by the following Monday, September 28. That understanding was based on the following sentence in the letter, which read: "Counsel will assume that [the parties] will have a final guaranty signed by [Husband] by close of business on Monday," September 28, 2020.

Finally, Husband testified regarding the significant attorney's fees he incurred in moving to enforce the agreement. Billing invoices admitted into evidence showed fees of $26,252.50. Counsel for Wife did not ask any questions about attorney's fees on recross-examination.

Wife testified that she signed the agreement at approximately noon on September 25, 2020, in her attorney's office. She instructed her attorney, consistent with the letter sent with the agreement delivered to Husband, that there was a condition that the agreement be signed on the same day. She read aloud the language of the letter, which said that the agreement was delivered "on condition that the agreement and the note be executed by

7

[Husband] today." The court, however, sustained Husband's objection to the admission of the letter. Husband did not sign the agreement or the note on September 25, 2020. On cross-examination, Wife testified that the emails between her attorney and Husband's attorney show that both attorneys were in communication throughout the day on September 25, from 8:16 a.m. to 3:57 p.m.

In closing argument, Husband's counsel stated that any condition that formed the basis of Wife's argument was never properly communicated, and Husband did not interpret the language in the letter as a condition. Husband believed there was time, and it was anticipated that the documents would be completed on Monday. Counsel for the parties were in communication the week leading up to the signing of the agreement, and at no point was a deadline communicated. Husband's counsel argued that this was a case of contract interpretation, and the court must look to the agreement itself to determine whether there was some term that went to withdrawal or revocation, and any document outside the agreement that purported to create a condition was parol evidence. Counsel argued that the parties had reached an agreement, Wife signed it, and that contract was validly executed, with "no valid condition placed on it."

Wife's counsel argued that the September 25 offer had a condition, which was not met, and therefore, there was no contract. She said that the agreement was only open that day, Husband did not accept it, and that was the "end of story, there's no agreement."

The parties appeared the day following the hearing, March 17, 2021, for the court's ruling. The court found that Wife signed the agreement on September 25, 2020, and Husband signed it on September 28, 2020. It noted that a separation agreement is a contract

between the parties, and therefore, the general rules governing contracts were controlling. Applying an objective interpretation of the agreement, the court found that the language of the agreement "indicated a mutual assent by the parties to enter into a voluntary separation and property agreement" on September 25, 2020. The court stated that, given its finding that the unambiguous language in the contract showed mutual assent to be bound by its terms, it did not need to address Wife's argument that mutual assent did not occur because her offer was conditioned on Husband's signing the agreement on September 25.

The court stated, however, that it would make alternative findings and conclusions with respect to that claim. The court discussed the claim, as follows:

> [Wife] indicates that her offer was conditional on [Husband] signing the separation agreement on September 25th, 2020, and points to language in an email sent by her attorney indicating such. However, [Husband] denies that [Wife] provided a hard deadline, and points to language by [Wife]'s attorney in the same email . . . indicating an expectation that the agreement would be finalized by the following week.

The court stated that, after consideration of the evidence and the credibility of the witnesses, it did not "find that [Wife's] offer included a definite time expiration of September 25th, 2020."

Alternatively, the court found that, even if the offer included a time limit, contract formation still would have occurred through the action of the parties. The court found a waiver of the condition, stating that counsel were in communication throughout the day, and at some point on September 25, Husband "indicated through counsel that he would not be able to sign the agreement" until September 28, 2020, and there was no evidence that Wife rejected Husband's "offer to sign the agreement on Monday, the 28th, rather than

9

Friday. In fact, the evidence indicates a willingness to accept the separation from [Husband] on Monday." The court found that Wife's delay of 17 days after Husband signed the agreement before raising the issue of untimeliness constituted a waiver of the requirement to sign the agreement on September 25, 2021.

The court cited to 2 *Williston on Contracts* § 5:5 (4th ed.),[4] which provides as follows:

> Often an offeror who has imposed a time limit in its offer does not in fact insist upon it, and by further negotiations the offeror may indicate a continued willingness to stand by the terms of its offer. Any such manifestation of continued willingness on the part of the offeror will extend the time during which acceptance may occur, constituting in effect a new offer which may be accepted, and if so accepted, will ripen into a contract.

The court stated that it was not persuaded that Wife was unwilling to extend the time for Husband to accept the offer after she learned that Husband was unable to sign the agreement on September 25. Accordingly, the court found that, when Husband signed the offer on September 28, the "agreement ripened into a contract . . . [M]utual consent of the parties to form a contract, namely the voluntary separation and property settlement agreement, has occurred."

The court advised that it was ready to hear the next motion. Wife's counsel stated that she was withdrawing the Motion to Set Aside, due to scheduling issues. The court then granted Husband's Motion to Enforce.

---

[4] Although the transcript says "[i]ndiscernable" when stating the citation, the quote is from 2 *Williston on Contracts* § 5:5 (4th ed.).

10

Wife's counsel noted that, in light of the court's ruling granting the Motion to Enforce, she would file a notice of appeal. She asked that "any further court action be stayed pending the resolution" of the appeal. The court agreed not to go forward with the divorce proceeding while Wife pursued her options.

The court indicated that there would not be a separate written decision because it read its ruling into the record. The civil hearing sheet reflecting the court's March 17, 2021 order granting the Motion to Enforce Agreement was entered in the docket entries on March 23, 2021.

On March 19, 2021, Husband filed a Supplemental Motion for Attorney's Fees, requesting that the court order Wife to reimburse him $22,752.50 for litigating his Motion to Enforce. Counsel argued that Wife's position regarding the agreement was frivolous and made "in bad faith without substantial justification in the hopes of renegotiating the terms and extracting more from [Husband]."

On April 7, 2021, Wife noted a timely appeal of the court's March 17, 2021 order. On May 7, 2021, the court issued an order granting Husband's Motion for Attorney's Fees and ordering Wife to pay Husband $22,752.50 in attorney's fees. The order noted that Husband had filed a Motion for Attorney's Fees on February 19, 2021, Wife had filed a response on March 5, 2021, and Husband had filed his supplemental motion on March 19, 2021.

On May 20, 2021, Wife noted a second appeal from the court's May 7 order. On May 21, 2021, this Court consolidated the two appeals.

**DISCUSSION**

11

Appellant contends that the court erred in granting the Motion to Enforce and the Motion for Attorney's Fees. Before addressing the merits of these issues, we must address whether this appeal is properly before this Court. Although the parties did not address this issue in their briefs, the issue of appellate jurisdiction may be raised by the Court *sua sponte*. *Milburn v. Milburn*, 142 Md. App. 518, 522–23 (2002).

Subject to certain exceptions, a party generally may appeal only from a final judgment rendered by the trial court. *Wash. Suburban Sanitary Comm'n v. Bowen*, 410 Md. 287, 294 (2009); Md. Code Ann., Cts. & Jud. Proc. Art. ("CJ") § 12-301 (2020 Repl. Vol.). A final judgment is one that settles all the claims against all the parties. *Bowen*, 410 Md. at 294–95; *Johnson v. Johnson*, 423 Md. 602, 607 (2011). Here, the trial court's order granting Husband's Motion to Enforce is not a final judgment because the court has not entered a judgment on the agreement and resolved the divorce proceedings, which remain pending.

As indicated, however, there are several exceptions to the final judgment rule: (1) appeals from interlocutory orders allowed by statute; (2) immediate appeals allowed under Md. Rule 2-602; and (3) appeals allowed under the collateral order doctrine. *Md. Bd. of Physicians v. Geier*, 451 Md. 526, 546 (2017). The purpose of these exceptions is to "'allow appeals from orders other than final judgments when they have a final irreparable effect on the rights of the parties.'" *Milburn*, 142 Md. App. at 524 (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 227 U.S. 541, 545 (1949)).

Prior to oral argument, the parties were asked to address the appealability of the circuit court's order. The parties argued that the appeal was permitted under the collateral order doctrine.

For the collateral order doctrine to apply, four conditions must be satisfied: (1) it must conclusively determine the disputed question; (2) it must resolve an important issue; (3) it must resolve an issue that is completely separate from the merits of the action; and (4) it must involve an issue that would be effectively unreviewable on appeal from a final judgment. *Geier*, 451 Md. at 546. The doctrine is to be applied "only sparingly," *Dawkins v. Balt. City Police Dept.*, 376 Md. 53, 63 (2003), and under "extraordinary circumstances." *Bowen*, 410 Md. at 296.

The parties note that the Court of Appeals has held that a trial court's denial of a motion to enforce a settlement agreement is subject to immediate appeal under the collateral order doctrine, citing *Clark v. Elza*, 286 Md. 208, 213 (1979). In *Clark*, 286 Md. at 210, there was a suit for damages for injuries due to an automobile accident. The parties made an oral settlement agreement prior to trial, but the plaintiffs subsequently refused to execute a release. *Id*. at 210. The defendants filed a motion to enforce the settlement agreement, which the court denied. *Id*. at 211.

The Court of Appeals held that the trial court's denial of the motion to enforce the settlement agreement was appealable under the collateral order doctrine. *Id*. at 213. In applying the four criteria for collateral orders, the Court stated:

> First, the order finally resolved the disputed question of whether the plaintiffs were bound by their oral settlement agreement or were entitled to proceed with the tort action. Second, because a decision holding the settlement

13

agreement to be enforceable would have the direct effect of terminating the litigation, it concerns "an important issue." Third, the questions bearing upon the enforceability of the settlement agreement have absolutely nothing to do with the merits of the tort cause of action. Thus, it is "completely separate" from the principal claim. Lastly, a final judgment on the merits of the underlying tort claim would render the ruling on the settlement agreement effectively unreviewable. One of the principal considerations in entering a pre-trial settlement agreement is the avoidance of the expense and inconvenience of a trial. If the defendants must proceed to a trial on the merits, this contractual benefit will be irretrievably lost. Regardless of the outcome of the trial or the outcome of an appeal after trial, the defendants will have been forced to go to trial and thus will have been deprived of a right under the contract if the contract should have been enforced.

*Id.* at 213. *See also Erie Ins. Exch. v. Estate of Reeside*, 200 Md. App. 453, 455 n.2 (2011) ("A ruling denying a motion to enforce a settlement agreement, although interlocutory, is subject to immediate appeal under the collateral order doctrine.").[5]

This case, however, does not involve an order denying a motion to enforce a settlement agreement. Rather, the order at issue here is an order *granting* a motion to enforce a settlement agreement. As explained below, we conclude that this ruling is not appealable under the collateral order doctrine.

---

[5] We note that, after *Clark* was decided, the United States Supreme Court held that a refusal to enforce a settlement agreement, which would have sheltered a party from trial, is not appealable under the collateral order doctrine. *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 884 (1994). It held that the court's order vacating a dismissal (and rescinding a settlement agreement) was not "effectively unreviewable" on final judgment, distinguishing a contractual right not to stand trial from immediately appealable decisions "involving rights more deeply rooted in public policy," such as the denial of a motion to dismiss based on double jeopardy. *Id.* at 865. The Court held that "rights under private settlement agreements can be adequately vindicated on appeal from final judgment." *Id.* at 869. *Accord Tamara A. v. Montgomery Cnty. Dept. of Health and Human Servs.*, 407 Md. 180, 191 (2009) ("'[T]he idea that an issue is not effectively reviewable after the termination of trial because it involves a 'right' to avoid the trial itself should be limited to double jeopardy claims and a very few extraordinary situations.'" (quoting *Shoemaker v. Smith*, 353 Md. 143, 169–70 (1999))).

With respect to the criteria applied in assessing the collateral order doctrine, the parties argue that, similar to *Clark*, the first three requirements are satisfied. They assert: (1) the trial court's order conclusively resolved the disputed issue whether the settlement agreement was enforceable; (2) the order determining that the agreement was enforceable resolved an important issue in the parties' divorce proceeding, which was premised on mutual consent; and (3) the issue regarding the enforceability of the agreement, which mainly addressed the disposition of the parties' property, was separate from the ultimate question whether a divorce should be granted.

Even if we agreed with the parties in that regard, Wife cannot meet the fourth requirement, i.e., that a final judgment on the merits of the divorce action would render the issue of enforceability of the agreement effectively unreviewable on appeal. In *Clark*, 286 Md. at 213, as indicated, the Court of Appeals stated that, if enforcement of a settlement agreement is denied, and the party must proceed to a trial on the merits, the party loses the contractual benefit of avoiding the expense and inconvenience of a trial.

Here, by contrast, where the order granted a motion to enforce a settlement agreement, there is no benefit lost. As counsel for Wife noted at argument, given the posture of the case, and the ruling that the agreement was valid, "that's the end . . . the divorce is granted and there is nothing else that can happen." Once the final judgment of divorce is granted, Wife can appeal and challenge the trial court's ruling on the Motion to Enforce. The order to enforce the settlement agreement is not effectively unreviewable on appeal from a final judgment, and it is not appealable under the collateral order doctrine. *See Saber v. FinanceAmerica Credit Corp.*, 843 F.2d 697, 703–04 (3d Cir. 1988) (similarly

15

holding that an order granting a motion to enforce a settlement agreement is not appealable under the collateral order doctrine).[6]

With respect to the order granting Husband's Motion for Attorney's Fees and ordering Wife to pay Husband $22,752.50 in attorney's fees, the parties did not argue that there was a different analysis with respect to this order.[7] Indeed, the Court of Appeals has held that such a judgment is not appealable under the collateral order doctrine because it similarly cannot meet the fourth requirement, i.e, there is not a serious risk of loss of this claimed right if appellate review is deferred until after the final judgment. *Yamaner v. Orkin,* 310 Md. 321, 326-28 (1987). Nor is such an order appealable under § CJ 12-303(3)(v) as an order for the payment of money. *See Simmons v. Perkins*, 302 Md. 232, 237-38 (1985). The order for attorney's fees, as well as the order to enforce the settlement agreement, is not an appealable order.

---

[6] At argument, counsel suggested that the provisions of Md. Code Ann., Fam. Law Art. ("FL") § 8-203 (2019 Repl. Vol.) made the order effectively unreviewable on appeal from a final judgment. FL § 8-203 requires a judge, within 90 days of granting a divorce, to determine whether property is marital property if there is a dispute on that issue and if the court reserves the power to make such a determination. Wife argues that requiring the parties to get a judgment of divorce prior to appealing the ruling regarding the validity of the agreement would make compliance with that provision difficult. Even assuming that FL § 8-203 would apply here, which is not clear given that Husband's complaint states that the agreement resolved "all issues of marital and non-marital property," the statute clearly provides for extensions of the 90-day period. We are not persuaded that FL § 8-203 makes the order enforcing the agreement unreviewable on appeal from the final judgment.

[7] The court did not say the basis for the order, but the motion that was granted asked for attorney's fees on the ground that Wife's position was frivolous and made "in bad faith without substantial justification in the hope of renegotiating the terms and extracting more from [Husband]." *See* Md. Rule 1-341 (authorizing court to award party to pay adverse party attorney's fees if conduct in maintaining or defending a proceeding was made in bad faith or without substantial justification).

**APPEAL DISMISSED. COSTS TO BE PAID BY APPELLANT.**