JOHN S. STILES et. al. *vs.* SARAH BROWN et. al.—*Dec.* 1843.

Where the court perceives from the mutual allegations of the parties, and from the evidence adduced in the cause, that they had stated and settled an account between themselves, they cannot claim a decree to account.

A complainant seeking to investigate ancient accounts, will have his case subjected to severe scrutiny; although he is not to be visited with all the consequences of *laches;* while on the other hand, the defendant's evidence may receive a more indulgent consideration. The time at which the claim is advanced, and a failure to prosecute it against original parties, while they were alive, are circumstances calculated to create suspicion against such a claim, and in a doubtful case strengthen the defences which the representatives of such original parties may set up.

Where the parties settle and adjust their mutual claims, and one gives the other a note for the balance due, this forecloses an enquiry into all antecedent transactions, unless upon the ground of error or fraud.

APPEAL from the Court of Chancery.

The bill of *John S. Stiles,* of the *city of Baltimore,* and of *William P. Maulsby,* trustee, filed on the 2nd July, 1840, for the benefit of the creditors of said *Stiles,* stated : that sometime about the year 1827, a judgment having been rendered against *J. S. S.* in *Baltimore* county court, for the sum of $1,000, or thereabouts, he requested a certain *Stewart Brown* to become his surety on an appeal bond, for the purpose of carrying said cause to the Court of Appeals; and at the same time he borrowed from said *Brown* his promissory note for the sum of about $1,900, and for the purpose of indemnifying the said *B.* for his said suretyship, and of securing the payment of the said note so borrowed, he conveyed to the said *B.* several lots or parcels of land lying and being in the *City of Baltimore,* and six shares of stock in the *Temascaltepec Mining Company of Baltimore;* that several, if not all, of the said shares of stock were sold by the said *Brown,* in his life-time, but for what prices or sums your orators do not know, except two shares, which sold for the sum of $1,265, as stated by said *B.;* and that said lots or parcels of ground were also sold, partly in the life-time of the said *B.* and partly since his death; that the complainants have no accurate knowledge of the amount of money realised by said sales, but are fully convinced that it largely exceeds the

amount of the said judgment and note; and, that a consider-able sum is now due and owing to your orators, who further state that, sometime in the year 1835, *John S. Stiles* made ap-plication for the benefit of the insolvent laws of *Maryland,* and that *William P. Maulsby* has been duly appointed permanent trustee for the benefit of the creditors, and has given bond, with security, according to law; that the said *S. B.* departed this life sometime in the year 1832, intestate, and that letters of administration have been granted to *Sarah, George, and John N. Brown ;* that said administrators, though often requested, have wholly refused and neglected to render to your orators any account of the monies received by the said *S. B.*, for the said stocks and for said lots or parcels of ground, and to pay over the balance now remaining in their hands after payment of the said judgment and the promissory note, &c.

Prayer that subpœna may issue to said administrators, &c., and that complainants may render a full, true and perfect ac-count of all and singular the monies received by the said *B.*, in his life-time, or by the said administrators, or any or either of them, since his death, from the sale of said stock and property before mentioned, and that a decree may pass ordering and re-quiring said administrators to pay over to your orator, *William P. Maulsby,* trustee, as aforesaid, such balance as upon a fair settlement of accounts may be found due, and that such other and further relief may be granted in the premises as to justice and equity shall seem meet, &c.

The answers of *Sarah, George,* and *John N. Brown,* admin-istrators of *Stewart Brown,* admitted that said *Stiles* made ap-plication for the benefit of the insolvent laws of *Maryland,* as stated in complainants bill, some time in the year 1835; but they do not know, and do not admit, that said *Maulsby* has been duly appointed permanent trustee for the benefit of the creditors of said *Stiles.* They admit that said *S. B.* departed this life some time in the year 1832, intestate, and that letters of administration have been granted to these defendants. They also admit that the said *John Stiles,* by deed of mortgage, da-ted 24th May, 1827, conveyed to said *S. B.* five lots of ground

situate, &c. numbered 21, 24, 44, 55, and 59, for the purpose
stated by complainants in their bill; and that by another deed,
dated the 31st of July, 1829, said *Stiles* further conveyed the
said lots to said *S. B.*, with power to sell and dispose of the
same absolutely; and the proceeds to apply, first to the pay-
ment of the said *S. B.* the amount due to him on the judgment
mentioned in said mortgage, and for the payment of which the
said *S. B.* had become surety, and of the sum of money lent
and advanced by said *S. B.* to said *Stiles*, and secured by said
mortgage, and the surplus, if any, to pay over to said *Stiles*,
or his assigns. They admit that three of said lots were sold
in the life-time of said *S. B.*; but they allege that if said *Stiles*
has no accurate knowledge of the amount of money realised
by said sales, as stated in complainants bill, it is because he
has forgotten his own acts, and not because said *S. B.* failed
to render an account thereof to him; for they further allege
that it appears by the records of *Baltimore* county court, that
on the 9th of October, 1829, the said *Stewart Brown* and *John
S. Stiles*, by deed of that date, conveyed to *William D.
McKim* the lots 21 and 24, above mentioned, the said *S. B.*
receiving $400 consideration therefor. That on the 10th of
October, 1829, the said *S. B.* and *J. S. S.*, by deed of that
date, conveyed to *John Kirby* the southernmost moiety of lot
No. 44, above mentioned, *S. B.* receiving $260 consideration
thereof; and that on the 10th October, 1829, the said *S. B.*
and *J. S. S.*, by deed of that date, conveyed to *William H.
Stewart* the northernmost moiety of said lot number 44, *S. B.*
receiving $260 consideration therefor. These defendants al-
lege that they have no accurate personal knowledge of the
state of accounts between said *S.* and said *B.* in the life-time
of said *B.*, but they believe the said *S.* to have been largely
indebted to the said *B.* at the time of his death. They allege
that after the death of the said *S. B.* said *S.* filed his bill in
this honorable court against the widow, heirs, and administra-
tors of said *B.*, alleging that said *S. B.* by his bond of convey-
ance, dated the 23rd of November 1830, bound himself to con-
vey to said *S.* two pieces or lots of ground, that is to say, the

remaining lots of these above mentioned, to wit, the lots number 55 and 59, on said *S.* paying to said *B.* a promissory note of even date with said bond, drawn by said *S.* in favor of said *B.* or order, for $2,700, bearing interest, payable at four months after date.    That said *S.* in his said bill further alleged that more completely to secure the payment of said promissory note said *S.* and his wife executed to said *B.* a mortgage of a tract of land in *Queen Anne's county, Maryland,* called *Marsh's Chester Farm,* all of which, &c.    These defendants further allege that on the application of said *S.* in said bill, and with the consent of the defendants thereto, and upon the allegation of said *S.* therein, that he was indebted to the administrators of *S. B.* the sum of $2,700 on said note, a decree was passed adjudging and ordering that on payment by said *S.* to the trustee in the said decree named, or to the said administrators, or on bringing into this court, to be paid to them, the sum of $2,700, with interest thereon, and the costs of the suit, the said *John S. Stiles* should have, hold, &c.; but in case said sum of money, with interest and costs, was not paid before the 1st of November 1833, then said trustee was ordered and directed to sell said property for the purpose of settling and paying the same, &c.    These defendants further allege, that although said *Stiles,* in his said bill, admitted that he was indebted to the administrators of *S. B.* in the sum of $2,700, yet that defendants have never claimed said amount from him, but that they have always limited their demand to the sum of $1,450, which they believe to have been justly due and owing from said *S.* to said *B.* on the promissory note of said *Stiles,* for that amount, dated 11th October 1832, drawn in favor of said *S. B.,* which note they file, &c.    These defendants further allege, that after the passage of said decree, to wit, on the 8th day of August 1833, the said *Stiles* and his wife, and the said *George Brown,* as trustee, by deed of that date, sold another of the above mentioned lots of ground, to wit, number 55, to *John Patterson,* for the sum of $750, of which $150 were received by said *Stiles* and $600 by said *G. B.,* in part liquidation of the said sum of $1,450; and that said deed expressly

admits that said *Stiles* was indebted to the representatives of *S. B.* in said sum of $1,450, as will appear by reference to a copy of said deed, which, &c.   These defendants further allege that after crediting said *S.* with said sum of $600, a considerable amount still remained due, and said *Stiles* entirely failing to pay the same at the time limited by said decree for the payment of the same, said trustee proceeded to sell the other lot of ground, to wit, lot number 59 above mentioned; that he sold the same for the gross sum of $910 ; that the sale thereof was duly reported to and ratified by this honorable court.

In relation to the *Temascaltepec mining stock*, these defendants say they know nothing thereof, except from some loose memoranda contained upon a paper found among the papers left by the said *Stewart Brown*, and which paper is herewith filed, marked, &c.   From this memoranda it appears that said *S.*, to secure his note for $1,995, due the 26th May 1828, transferred six shares of said stock to said *S. B.;* that on the 12th day of September 1828, one of these shares was sold for $620 ; on the 29th day of September 1828, another was sold for $645 ; on the 4th October 1828, one was returned to *J. S. S.;* and on the 25th February 1829, another was given to said *S.* to be sold, he to keep $150, the balance to be paid to *S. B.*   It does not appear whether said *Stiles* ever sold said share of stock, or paid any part of the proceeds thereof to *S. B.* From memoranda on another part of said paper it further appears that on the 30th September 1828, the said *S. B.* held as security for the note of *John McFadon*, dated the 29th September 1828, at ninety days, for $666, two shares of *Temascaltepec mining stock*, viz : one of those of said *Stiles'*, and one transferred by *Margaret McFadon;* and that on the 25th March 1829, two shares of stock were transferred to *Margaret McFadon;* whether one of them shares was the property of said *Stiles*, and if his, what it produced, these defendants do not know.   It does not appear what became of the remaining share or shares of stock transferred by said *Stiles* to said *Brown ;* and defendants do not know whether said share or shares were returned to said *Stiles* or sold by said *Brown,* or whether they

still remain in the name of said *Brown;* but they allege that said stock, about Nov. 1829, became perfectly worthless in the market, and has so continued ever since; and they think it probable that it was so considered both by said *Stiles* and *Brown.* They allege that there is now standing in the name of *Stewart Brown* some shares of said stock, and that they are ready to transfer a share or shares thereof to said *Stiles*, or to his permanent trustee, whenever ordered to do so by this honorable court. They allege that they never heard of any claim or demand on account of said stock by said *Stiles* until a long time, that is to say, about six years after the death of said *S. B. ; and they further allege that said Stiles having, long after the transfer of said stock to said Stewart Brown, given his said note to said Brown for* $1,450, *as above alleged, and having after the death of said Brown deliberately signed a deed setting forth that he was indebted to the representatives of said Stewart Brown in that sum, shows satisfactorily that complainants can have no fair claim against the representatives of said Stewart Brown, for or on account of said stock, but that all accounts between said Stiles and Brown must have been settled between them in the life time of said Brown, and the above amount of* $1,450 *have then been ascertained to be due, &c.*

With this answer the various exhibits referred to in it were filed, and after proof taken, the cause was referred to the auditor, who, with other accounts, reported account B, viz :

DR. *John S. Stiles in acc't with Sarah Brown, George Brown and John N. Brown, admin'rs of S. Brown.*

| | | |
|---|---:|---:|
| 1832, Dec. 13th, To his note due this day, - | $1,450 | 00 |
| By this sum paid by sale of property, 8th Aug. 1833, interest having been paid, - - | 600 | 00 |
| | 850 | 00 |
| Interest from 8th Aug. 1833, to 15th July 1835: 1 y. 11 m. 7 ds. | 98 | 74 |
| | 948 | 74 |

| | | |
|---|---|---|
| By proceeds of sale in *Stiles* vs. *Brown* and others, in this court, 15th July 1835, and defendants answer, - - - - | $834 | 53 |
| | 114 | 21 |
| Interest from 15th July 1835 to 28th Oct. 1841: 6 ys. 3 ms. 13 ds. - - - - | 43 | 08 |
| Balance due to the defendants | $157 | 29 |

Which was ratified by the Chancellor, (BLAND,) 3rd March 1842, who also decreed that the said balance should be paid the defendants, out of the insolvent's estate, by the trustee, if the assets were sufficient to pay the same.

The complainants appealed to this court.

The cause was argued before STEPHEN, ARCHER, DORSEY and SPENCE, J.

By ALEXANDER for the appellants, and
By BROWN and BRUNE for the appellee.

ARCHER, J., delivered the opinion of this court.

It has been admitted by the counsel for the appellant, that if we should believe from the mutual allegations of the parties, and from the evidence adduced, that they had stated and settled an account between them, the appellants cannot claim a decree at our hands. This admission is in strict conformity with the rules of equity governing bills to account.

In our enquiry into this question, we cannot forbear to remark that the account now sought at the hands of the defendant, is of transactions not of recent origin, but of an antiquity, which if it do not in point of law subject the party to be visited with all the consequences of laches, yet necessarily subjects his case to a severer scrutiny, and the defendants evidence to a more indulgent consideration. The time, too, at which this claim is sought to be enforced—several years after

the death of the party with whom the transactions were had, who if living, it is reasonable to believe, might have explained what at this distance of time has thrown difficulties over the transactions complained of; and the failure during the lifetime of the defendant's intestate to institute this proceeding, are circumstances calculated to throw suspicion over the claim of the complainant, and in a doubtful case would strengthen the defences which might be set up in behalf of the defendant.

The testimony, however, in the record leaves us no room for reasonable doubt on the subject. On the 11th of October, 1832, *John S. Stiles* passed his note to *Stewart Brown*, payable four months after date, for fourteen hundred and fifty dollars. A bill was filed by *Stiles*, (at what time the record does not show,) alleging that he had given a mortgage to secure *Brown* the payment of the sum of $2,700, and praying a decree for the re-conveyance of the property mortgaged upon payment of the debt; and the Chancellor decreed, on 13th July, 1833, the payment of the money and re-conveyance of the property, and in case of a failure to pay the money that the mortgaged property should be sold. Afterwards, on the 8th of August, 1833, *George Brown*, the trustee in said chancery suit, *John S. Stiles* and wife, unite in a deed of a lot of land in the city of *Baltimore* to *John Patterson*, in which deed the decree above referred to is recited, and it is further recited that at the time of passing the decree, viz, on the 13th July, 1833, the sum of $1,450 only was owing to *Stewart Brown's* representatives from *John S. Stiles*, which it is recited is known to and admitted by *Brown's* administrators. Here is a clear and solemn recognition of a settlement of accounts, and an adjustment of claims. Only the sum of $1,450 was due to *Brown*. The parties correct the error in the decree by their mutual admissions, and assume the amount of the note of October 11th, 1832, as ascertaining the balance due. But independent of this clear recognition of a settlement and adjustment of the claims of the respective parties, the letter of *Stiles*, of the 23rd February, 1837, in which he promises to call and adjust the balance, is strongly confirmatory of the idea of a settlement

between the parties, and entirely negatives the hypothesis that the representatives of *Brown* are either largely indebted to him, or indebted to him at all. By the testimony which the record furnishes we feel ourselves led conclusively to the opinion that the parties settled and adjusted their claims by the note of 13th October, 1832. This of course forecloses an enquiry into all antecedent transactions, unless upon the ground of error or fraud, and we perceive no evidence of either in the record. If it be true that some of the shares of the *Temascaltepec mining company* remained in the hands of *Brown* unsold, which had been transferred to him as a security for a loan, we may fairly infer, the proof showing they were worthless in December, 1829, that they were left, on the settlement of October, 1832, when the note was given for $1,450, in the hands of *Brown*, with consent of *Stiles*. They were then worthless and would be of no use to any one.

Upon the whole case, therefore, after bestowing our best reflections upon it, we entertertain the opinion that account B, as reported by the auditor, reaches the justice of the case, and as this account has been made the basis of the Chancellor's judgment we affirm his decree.

DECREE AFFIRMED.