586 A.2d 775

**William DAVID, et ux.**

v.

**Ronald A. WARWELL, et ux.**

**No. 732, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

March 4, 1991.

Lawrence B. Goldstein, Annapolis, for appellants.

Argued before MOYLAN, ALPERT and CATHELL, JJ.

CATHELL, Judge.

Appellants (Davids/lessors) and appellees (Warwells/lessees) entered into a lease agreement in August of 1987. Attached to the lease agreement was an addendum as to a

purported option to purchase. In pertinent part, that addendum provided:

> The Lessees will have the first Option of refusal On Sale of the property. The Lessees will (at their option) exercise the option to buy the property ($79,900) within the lease period or renewal, extension or any additional lease between the parties.[1]

Disputes occurred which resulted in the lessors, the appellants, filing a suit against a tenant holding over and the appellees, lessees, filing suit for specific performance of the option and for breach of contract. Eventually the suits were consolidated, and ultimately a hearing was held on a Motion to Enforce Settlement filed by appellees.[2]

The Warwells argued below that the attorneys for the parties had agreed to settle the litigation and that an executed contract for the sale was to be performed by the Davids to effectuate that settlement. The Davids' attorney responded that the Davids had decided not to settle on the terms that had been discussed by counsel. After the Motion to Enforce Settlement was filed, but before the hearing, the Warwells' attorney communicated with the Davids (the Davids were then unrepresented). That letter appears to have contained a further settlement agreement or efforts to settle the litigation. Thereafter, the first Motion to Enforce Settlement was granted; that settlement order was subsequently rescinded.

Ultimately a hearing was held on the subsequent Motion to Enforce Settlement. The Davids contested the settlement, asserting that such an agreement did not exist, contending that the purported agreement was not suffi-

---

**1.** The parties have treated the issue as involving the existence or non-existence of a regular option. The language appears to support better a "right of first refusal" at a stated price. There was no evidence that the Davids had received any offers or were actually seeking to sell at the time of the dispute.

**2.** A previous motion to enforce had been granted, then rescinded for procedural reasons prior to the consolidation. In the meantime, appellant's original attorneys had withdrawn their appearance.

ciently specific and lacked necessary terms and conditions. They further argued that even if agreement had been reached, it was dependent upon a further agreement as to a subsequent writing which was never realized. They also contended that the subsequent writing was legally required in order to satisfy the statute of frauds. Most importantly, the appellant pointed out to the trial court that:

> There is no evidence being taken, no witnesses have testified that my clients entered into a settlement agreement. Mr. Ward (prior counsel for the Davids) wasn't called. Mr. David wasn't called. We have (only) argument to this extent today. [Parenthetical material in original.]

Appellants contend that:

1. An oral agreement, for purposes of a motion to enforce a settlement pertaining to the purchase of real property, was subject to disavowal under the statute of frauds because it contemplated the execution of a formal written document.

2. Sufficient evidence was not presented to the trial court to establish the existence of an oral or written settlement agreement pertaining to the purchase of real property.

### The General Rule on Enforcement of Settlement Agreements

■ The settlement of litigation has long been a favored method of resolving disputes. The Court of Appeals, as early as the case of *Stiles v. Brown*, 1 Gill 350 (1843), stated:

> It has been admitted by the counsel for the appellant, that if we should believe from the mutual allegations of the parties, and from the evidence adduced, that they had stated and settled an account between them, the appellants cannot claim a decree at our hands. This admission is in strict conformity with the rules of equity governing bills to account.

\* \* \* \* \* \*

By the testimony which the record furnishes we feel ourselves led conclusively to the opinion that the parties settled and adjusted their claims by the note of 13th October, 1832. This of course forecloses an enquiry into all antecedent transactions, unless upon the ground of error or fraud, and we perceive no evidence of either in the record.

*Id.* at 356, 358. In another early case, *McClellan v. Kennedy*, 8 Md. 230, 248 (1855), quoting from 1 Story's Eq. secs. 131, 132, the Court said:

If compromises are otherwise unobjectionable they will be binding, and the rights will not prevail against the agreement of the parties, for the right must always be on one side or the other, and there would be an end of compromises if they might be overthrown upon any subsequent ascertainment of right contrary thereto. "The doctrine of compromises rests on this foundation."

More recently, the Court of Appeals addressed the issue of settlement agreements in *Clark v. Elza*, 286 Md. 208, 406 A.2d 922 (1979), where Judge Eldridge, for the Court, stated:

Moreover, it is logical to hold that executory accords are enforceable. An executory accord is simply a type of bilateral contract. As long as the basic requirements to form a contract are present, there is no reason to treat such a settlement agreement differently than other contracts which are binding. This is consistent with the public policy dictating that courts should *"look with favor upon the compromise or settlement of law suits in the interest of efficient and economical administration of justice and the lessening of friction and acrimony."* *Chertkof v. Harry C. Weiskittel Co.*, 251 Md. 544, 550, 248 A.2d 373 (1968), *cert. denied*, 394 U.S. 974, 89 S.Ct. 1467, 22 L.Ed.2d 754 (1969).

*Id.* at 219, 406 A.2d 922 (emphasis added).

This Court recognized the general policy in *Eastern Environmental Endeavor, Inc. v. Industrial Park Authority*

*of Calvert County,* 45 Md.App. 512, 516, 413 A.2d 1355 (1980), where we said: "One year after *Horst* [3] the Court of Appeals announced a favorable policy with regard to the compromise or settlements of law suits in the interest of efficient and economical administration of justice and the lessening of friction and acrimony." (Citations omitted.) *See also Welsh v. Gerber Products,* 315 Md. 510, 524, 555 A.2d 486 (1989). "It is well established that forbearance to exercise a legitimate right or claim is sufficient consideration to support an agreement." *Beall v. Beall,* 291 Md. 224, 230, 434 A.2d 1015 (1981).

The federal courts and other courts have looked with favor on the formulation of a policy encouraging the settlement of litigated issues. The United States District Court in *Mungin v. Calmar Steamship Corp.,* 342 F.Supp. 484 (D.Md.1972), was faced with a case which involved an insurance claim that had resulted in litigation. After litigation had commenced, an agreement of settlement was allegedly reached. As in the case at bar, the matter proceeded on a Motion to Enforce Settlement. The Court said at 485:

It is well established that this Court has inherent power to summarily enforce settlement agreements entered into in an action pending before it....

As a general principle, the settlement of disputes is favored by the courts.

\* \* \* \* \* \*

[T]hat a settlement agreement enjoys great favor with the courts; consequently it is only in the most extraordinary circumstances that such a pact will be vacated for the general principle is that "a settlement agreement ... voluntarily entered into cannot be repudiated by either party and will be summarily enforced by the Court." [Citation omitted.]

---

3. *Horst v. Kraft,* 247 Md. 455, 231 A.2d 674 (1967).

In *Autera v. Robinson,* 419 F.2d 1197, 1199 (D.C.Cir. 1969), the Court opined:

> Voluntary settlement of civil controversies is in high judicial favor.... When the effort is successful, the parties avoid the expense and delay incidental to litigation of the issues; the court is spared the burdens of a trial and the preparation and proceedings that must forerun it. By the same token, there is everything to be gained by encouraging methodology that facilitates compromise. [Footnotes omitted.]

*See also Brown v. Brown,* 343 A.2d 59 (D.C.1975) (the law favors the settlement of controversies). We thus accept, as we must, that agreements to settle litigation are favored. We now address the specific issues raised by the appellant.

## I

An oral agreement, for purposes of a motion to enforce a settlement pertaining to the purchase of real property, was subject to disavowal under the statute of frauds because it contemplated the execution of a formal written document.

 Appellant asserts that the arguments of counsel before the hearing judge would support a finding that, even if the parties had agreed to settle, the alleged agreement contemplated a written agreement executed by the parties which would finalize the terms not already finalized. They argue that as no such written agreement was made, settlement had not in fact occurred. They further argue that, even if an oral agreement involving the conveyance of land had occurred, it would be unenforceable unless it was in writing to satisfy the requirements of the statute of frauds.

There was an option to purchase realty in the case of *Beall,* 291 Md. 224, 434 A.2d 1015. The Court examined the effect of the statute of frauds:

> An option to purchase land concerns the sale of land and is, therefore, governed by the statute of frauds....

\* \* \* \* \* \*

In sum, we have stated that the statute of frauds requires a memorandum for the sale of real estate to contain all the elements of a valid contract.

* * * * * *

Totally absent from the 1975 memorandum is any recitation of consideration for Calvin and Cecilia's extension of their offer to sell for three additional years.... Carlton argues, however, that the extension contract is nevertheless enforceable in his action for specific performance under the equitable doctrine of part performance. He asserts that the consideration for the extension was his forbearance upon exercising his 1971 option, which, in October 1975, was good until February 1976.

It has generally been accepted in Maryland that forbearance to exercise a legal right is sufficient consideration to support a promise.

*Id.* at 228–30, 434 A.2d 1015 (citations omitted).

We addressed a statute of frauds issue similar to the one raised in the case at bar in *Litzenberg v. Litzenberg*, 57 Md.App. 303, 469 A.2d 1279 (1984) (*Litzenberg I*), saying:

In contending that the settlement agreement does not comply with the statute of frauds and, therefore, is unenforceable, appellant correctly notes that the agreement contemplates the transfers of two interests in land....

Admissions of a party in testifying, though in form evidence, are in essence not mere evidence, but make evidence against him unnecessary.... We think the Statute of Frauds requires no more.

Furthermore, admissions of a party in the form of testimony would constitute sufficient "memoranda" under Section 4 or Section 17, or "writings" under Section 7, of the statute. For this purpose we think recorded testimony should be regarded as equivalent to signed depositions.

* * * * * *

> Such statements would be sufficient to constitute admissions for the purpose of satisfying the statute of frauds if, in fact, Mr. Lockhart was authorized to enter into the agreement. If he had such authority, any document that he would have signed for appellant would have satisfied the Statute of Frauds. It follows then ... that if Mr. Lockhart's signing of a document would satisfy the statute, then the admissions in his testimony would also satisfy the statute. Thus, we hold that Mr. Lockhart's testimony may satisfy the signed writing requirement of the Statute of Frauds.
>
> While having trial counsel testify in the proceeding "is looked on with disfavor except in unusual circumstances, ... such testimony is not inadmissible...." Such testimony is particularly relevant on issues concerning the validity, formation, and enforcement of settlement agreements.

*Id.* at 315–17, 469 A.2d 1279 (citation omitted). We then remanded the matter to the trial court because of procedural inadequacies. After the remand, a motion to enforce the settlement agreement was made at the trial court. The wife opposed it, raising the statute of frauds defense. The trial court granted the husband's motion to enforce. We affirmed in an unreported opinion (*Litzenberg II*). The Court of Appeals issued its writ of certiorari on the wife's petition. That Court reversed in *Litzenberg v. Litzenberg*, 307 Md. 408, 514 A.2d 476 (1986) (*Litzenberg III*). It first opined:

> This Court has held that various sections of the 1677 Statute of Frauds or modern versions thereof, are satisfied by admissions in the form of sworn testimony in court or on deposition, or in an answer to a complaint....

*Id.* at 415, 514 A.2d 476. It then stated:

> The party to be charged can satisfy the above rule by making the admissions through an agent. For example, testimony in court by an authorized officer of a corpora-

tion who acknowledges an oral contract on which the corporation is charged would satisfy the statute. In the case before us, however, Lockhart was not the agent of Dorothy when he acknowledged the settlement agreement in his testimony. His testimony is not an in-court admission by Dorothy. [*Id.* at 417, 514 A.2d 476, footnote omitted.]

\* \* \* \* \* \*

Our cases also make it clear that the Statute of Frauds, at least as it applies to executory land contracts, is not satisfied by a finding that there was in fact an oral contract to transfer.... [*Id.* at 420, 514 A.2d 476.]

\* \* \* \* \* \*

Accordingly, even if a demurrer had admitted the existence of an oral contract or the court has found such a contract, the statute bars specific performance or damages based on the express contract. *And where, as here, the oral agreement for the transfer of an interest in land contemplates the execution of a written document the contract is subject to disavowal until it is formally executed.* [*Id.* at 417, 514 A.2d 476 citations omitted, emphasis added].

We were likewise concerned with the statute of frauds in our recent case of *Pearlstein v. Maryland Deposit Insurance Fund,* 78 Md.App. 8, 552 A.2d 51 (1989), where we said:

The clear import of the disposition in *Litzenberg* [4] is that even if there was evidence that the parties reached an oral agreement on January 2, 1987, as to a property settlement, the agreement would be subject to disavowal because it contemplated the execution of a formal written document. As we previously noted, the statute of frauds governs the requirements for contracts concerning the sale or disposition of land or of any interest therein. Several provisions of the proposed agreement disputed

---

**4.** This reference is to *Litzenberg v. Litzenberg,* 307 Md. 408, 514 A.2d 476 (1986) (*Litzenberg III*).

here concerned the disposition of appellants' interests in realty. Under § 5–104 and *Litzenberg,* the agreement should have been in writing and signed, because it concerned land *and* because it contemplated the execution of formal, written documentation. Accordingly, we reject appellants' argument that the oral testimony exception to the statute of frauds applies in this case.

*Id.* at 19–20, 552 A.2d 51 (emphasis added, citations omitted, footnote omitted).

Assuming, *arguendo,* that the parties had negotiated a settlement, that settlement contemplated two remaining occurrences: (1) the finalization of certain terms, *i.e.,* financing, commissions, etc., and (2) more importantly, a written contract containing all the completed terms and conditions of the agreement.[5] At the time of the trial court's granting of the motions, no written agreement required by the alleged settlement had been executed, nor had there been any testimony at all, nor any affidavits sufficient to have satisfied the requirements of the statute of frauds. We note that the alleged settlement agreement contemplated a future written agreement. The trial judge relied on an *antecedent* writing, which arguably created nothing other than a right of first refusal, to determine that the requirements were met. In so doing, he erred. Under the circumstances of this case, compliance with the statute of frauds necessitated a post-agreement written contract. There was none.

## II

Sufficient evidence was not presented to the trial court to establish the existence of an oral or written settlement agreement pertaining to the purchase of real property.

---

**5.** The case at bar does not involve a question of part performance taking the issue out of the statute of frauds. (*See Brown v. Brown, supra,* where part performance was declared an "exception" to the statute on equitable estoppel grounds, and *Billes v. Bailey,* 555 A.2d 460, 462 (D.C.1989), where that court stated: "Moreover, the fact that a compromise is oral does not mitigate its effectiveness when a party acts in reliance upon it."

We also conclude that the judge erred in finding that the appellees met their burden of proof in establishing the existence of the settlement agreement.

The federal courts have commented on the necessity for completeness in determining the existence of settlements. In *Wood v. Virginia Hauling Co.*, 528 F.2d 423, 425–26 (4th Cir.1975), the United States Court of Appeals stated:

> The task of the District Court upon remand is to find, if he can, the terms of the *complete* settlement agreement, or determine that there was none. A settlement agreement by definition should end litigation. Court clerks and federal judges cannot monitor the disintegration of a course of action by bits and pieces.

> There is no such thing as half settlement or even 95 percent settlement. It is for the district court either to implement a complete settlement agreed upon by the parties or to restore them to the status quo prior to partial execution of an aborted contract. There can be no in-between. It is settlement *vel non*. [Citation omitted.]

In the case at bar, in the absence of a written contract containing finalized terms, the dispute was not yet resolved or settled. The trial judge opined:

> Granted there was no discussion in the option of ... who was going to bear the cost of settlement or ... the Merrill Lynch Realty's commission, but it certainly appears on the written document [6] that all those things were covered. There was an FHA financing contingency [which] ... did include a commission for Merrill Lynch at seven percent, and I think its clear that there was negotiation after that because the Davids never signed that document and it appears that the oral negotiations were that the buyer would pay full settlement costs ... and

---

**6.** The trial judge is referring to the subsequent written contract which did mention the items. It was not executed by appellants and was disavowed.

Merrill Lynch has waived its commission.... [7]

He then opined, "[S]o I think *if* in fact they are able to purchase it, the agreement is enforceable so I will grant...." (Emphasis added.) Thus, at the time of his order, the trial judge recognized a remaining contingency, *i.e.*, the ability of the appellees to meet their obligations. Additionally, it is clear that there was *no evidence* upon which the trial court could have based its decision.

We discussed, in *Litzenberg I*, the federal case of *Massachusetts Casualty Ins. Co. v. Forman*, 469 F.2d 259 (5th Cir.1972), at 310, quoting from the *Massachusetts* case:

A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it.... However, where material facts concerning the existence of an agreement to settle are in dispute, the entry of an order enforcing an alleged settlement agreement *without a plenary hearing is improper.* [Emphasis added.]

We then discussed *Autera v. Robinson*, 419 F.2d 1197 (D.C.Cir.1969), saying at 312–13:

We are of the opinion that a "summary" proceeding and a "plenary" proceeding are not absolute, extreme opposites but, rather, that those terms represent opposite ends of a continuum with some proceedings being more or less "summary" in nature than others.... These procedures were inadequate to deal fully with the issues before the court. Serious questions as to the authority of the Auteras' former attorney and to the validity of Mrs. Autera's release were raised during the course of the proceeding. These questions were decided on the unsworn remarks of the attorneys and the affidavits filed with the Auteras' motion.

---

7. At the hearing, an attorney in the audience stood up and said that Merrill would waive the commission. Merrill Lynch Realty, however, was not, so far as we know, a party to the suit. That such an assertion would bind Merrill Lynch Realty is at best questionable.

Likewise, in *Massachusetts Casualty Ins. Co. v. Forman, supra,* the circuit court held that the procedures used by the district court were insufficient. Again, as in *Autera,* there was no live testimony presented in the lower court. Rather, the trial judge relied upon unsworn statements of trial counsel....

■ There was no sworn testimony by anyone, nor were there any affidavits, depositions, interrogatories or anything remotely resembling evidence adduced at the motion hearing in the case *sub judice.* Neither appellees nor appellants were sworn. Neither party was called to testify. The attorneys involved in the settlement negotiations were not called upon to give sworn testimony. At the most, the case was decided solely on the arguments of counsel. We recently said in *Pearlstein,* 78 Md.App. at 19, 552 A.2d 51, that:

> Under these circumstances it simply cannot be argued that the trial court could have enforced the terms mentioned in appellants' proffers separately from various crucial terms yet to be decided.... There is no genuine factual dispute here over whether the parties reached agreement. The only dispute in this case is the legal one of whether despite the parties' disagreement through practically every step of the negotiation process both before and after the January 2 conference, there could have been a valid and binding oral agreement. Our answer is an emphatic no....

In discussing the similar concept of accord and satisfaction,[8] we said in *Barry Properties, Inc. v. Blanton & McCleary,* 71 Md.App. 280, 286, 525 A.2d 248 (1987), that: "Of course, the mere allegation that there had been an accord and satisfaction of the judgment is not enough; that fact must

---

**8.** Accord and satisfaction is a "method of discharging a claim whereby the parties agree to give and accept something in settlement of the claim and perform the agreement, the 'accord' being the agreement and the 'satisfaction' its execution or performance, and it is a new contract substituted for an old contract...." *Black's Law Dictionary* 17 (6th ed. 1990).

be proven." We hold that a hearing on a motion to enforce a settlement agreement, where the existence of the agreement is contested, is not a routine motions hearing. Where the agreement itself is contested, we hold that a full plenary hearing is required. The authorities in other jurisdictions are generally in accord.

In *Massachusetts Casualty Insurance Co. v. Forman*, 469 F.2d 259 (5th Cir.1972), *modified after remand*, 516 F.2d 425, *reh. denied*, 522 F.2d 1383 (5th Cir.1975), *cert. denied*, 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976), a hearing was held on Forman's Motion to Compel Settlement in accordance with agreement between counsel. That court stated:

> Where material facts concerning the existence of an agreement to settle are in dispute, the entry of an order enforcing an alleged agreement without a plenary hearing is improper.
>
> From the meager record ... consisting primarily of unsworn statements by opposing counsel, it is clear that a material dispute of fact existed.... [9]
>
> \* \* \* \* \* \*
>
> Both parties should be given a full and fair opportunity to prove their version.... As attorney Cushman lamented to the court below, absent the opportunity to contest in an adversary proceeding allegations that a settlement has been reached "[i]t appears to be very dangerous to talk to [opposing] counsel." [Brackets in original.]

*Millner v. Norfolk and Western Railway Co.*, 643 F.2d 1005, 1008 (4th Cir.1981), involved a prelitigation alleged settlement agreement that was, when litigation subsequently ensued, pled as a bar. At the evidentiary hearing, there was conflicting testimony as to the existence of the agreement. The court first addressed:

---

9. The record before the trial court in the case at bar was the unsworn conflicting testimony of the opposing attorneys.

The threshold question raised by this appeal is whether the settlement agreement ... was amenable to summary enforcement by the District Court.

&ast; &ast; &ast; &ast; &ast; &ast;

When, however, there is a material dispute about the existence of a settlement agreement, or the authority of an attorney to enter a settlement agreement on behalf of his client, the trial court must, of course, conduct a plenary evidentiary hearing in order to resolve that dispute. [Citations omitted.]

In *Autera,* 419 F.2d at 1203, the hearing on the motion was limited to unsworn remarks of counsel. That court held:

A motion to enforce a settlement contract is neither ordinary nor routine. It is the modern counterpart of the olden practice involving supplemental pleadings and formal trial or hearing of the issue as thus developed.... The parties ... had valuable interests at stake.... To the extent that their several representations to the court left issues of fact for determination, they are entitled to an evidentiary hearing. [Footnotes omitted.]

There was no plenary hearing. There was *no evidence* before the trial court. The appellees, therefore, failed to establish the existence of any settlement agreement. The trial court was thus in error in granting the motion.

JUDGMENT REVERSED, COSTS TO BE PAID BY APPELLEES.