28 A.3d 54

**ERIE INSURANCE EXCHANGE**

v.

**ESTATE OF Jeanne R. REESIDE, et al.**

**No. 2941, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Sept. 1, 2011.

454

Edward J. Brown, Ellicott City, MD, for appellant.

Clifton M. Mount (Jackson & Campbell PC, on the brief), Washington, D.C., for appellee.

Panel: EYLER, JAMES R., WRIGHT, and JAMES P. SALMON (Retired, Specially Assigned), JJ.

WRIGHT, J.

This case arises out of a claim for damages filed by appellee, the Estate of Jeanne R. Reeside ("Estate"), in the Circuit Court for Montgomery County, against appellant, Erie Insurance Exchange ("Erie"),[1] and the Washington Suburban Sanitary Commission ("WSSC"). On January 11, 2010, Erie filed a motion to enforce settlement. Following a hearing on February 2, 2010, the court denied Erie's motion. This interlocutory appeal followed.[2]

Erie presents a single question:

Did the circuit court err by failing to enter an order enforcing the parties' settlement agreement and/or permitting the case to proceed to trial after a substituted agreement had been reached?

For the reasons that follow, we affirm the judgment of the circuit court.

---

1. The complaint named "Erie Insurance Company and/or Erie Insurance Exchange and/or Erie Insurance Property and Casualty Company" as defendants. Erie Insurance Exchange is the legal entity that answered Reeside's complaint and is the party that filed the present appeal.

2. A ruling denying a motion to enforce a settlement agreement, although interlocutory, is subject to immediate appeal under the collateral order doctrine. *Clark v. Elza,* 286 Md. 208, 213, 406 A.2d 922 (1979).

## Facts and Procedural History

According to the Estate's complaint, "[o]n or about July 6, 2003, WSSC sewage pipes backed up causing raw sewage to flood" Jeanne R. Reeside's basement.[3] The flood damaged " 'family heirlooms,' including, but not limited to, photographs, films, documents and miscellaneous personal property." The Estate claimed that WSSC "authorized Ralph Reeside, one of the personal representatives of the Estate, to have the Personal Property cleaned and/or restored at an organization . . . operating under the name of 'Document Reprocessors.' " In its brief, the Estate alleges that "WSSC failed and/or refused to pay for any clean up and/or remediation . . . [and the Estate was] forced to pursue reimbursement . . . against their home owners' insurance company—Erie."

On September 26, 2007, WSSC and the Estate attended a mediation session. According to the Estate, "WSSC made a monetary offer to settle" during that meeting. On October 2, 2007, counsel for the Estate sent an e-mail to counsel for Erie and WSSC, stating:

I have informed the assignment clerk of the settlement, and stet'd the case for thirty days.

Heather [WSSC's attorney]—please make the check a two party check payable to "Document Reprocessors and The Estate of Jeanne Reeside."

Thank you.

On October 10, 2007, the court stayed the case "for a period of 30 days" stating that "failure to file the joint line of dismissal within 30 days will result in this case being dismissed without prejudice."

By e-mail dated October 17, 2007, counsel for WSSC informed the Estate that "the check and release" would arrive by mail. On October 26, 2007, counsel for the Estate responded by stating that "[t]he settlement agreement and release are not acceptable as written." Counsel for the Estate also asked WSSC to make six changes, including the following:

---

3. Jeanne R. Reeside has since passed away.

1. The Estate is not releasing and/or settling with Erie. The Estate has agreed to dismiss the pending lawsuit as to both WSSC and Erie, with prejudice. The Estate is not giving any sort of blanket release to Erie. The Estate has settled with and is releasing WSSC only.

2. The proposed settlement is with WSSC only. The Estate is not agreeing to pay any monies to Document Reprocessors over and above what the Estate will pay Document Reprocessors.

&ast; &ast; &ast;

4. Your request that the Estate defend and indemnify WSSC is totally unacceptable and must be eliminated. Please see my general comments above. Obviously, I disagree with you on this. The clause is narrowly drawn and is standard in releases of this type.

On November 6, 2007, the Estate e-mailed WSSC to inquire about the "status of the revised settlement agreement." WSSC responded that same day and stated, in pertinent part:

Generally, with any settlement, WSSC wants to end its exposure on a particular matter for all time. The indemnification clause is therefore crucial. This clause is narrowly drafted in that it just applies to situations in which the Estate would sue another party and then that party would bring us in.

On Thursday, November 8, 2007, counsel for the Estate informed WSSC:

Again, for the reasons previously stated, Mr. Reeside and his sisters will not sign the settlement agreement with Erie. The estate did not settle with Erie. There will be no indemnity of WSSC. That has never been any part of any agreement. There will be no promises as to what Document Reprocessors will or will not do. Please make ALL of the previously requested changes, or Monday I will request that the clerk put this case back on trial track.

On Wednesday, November 14, 2007, WSSC replied:

Again, as with any settlement, WSSC wants to end the matter entirely and avoid being brought into future law-

suits. Therefore, I cannot make the changes that you have suggested. I suggest that we get the mediator involved again to try and work something out.

That same day, the Estate answered: "No. Tomorrow I am requesting this matter be put back on the trial track." On April 22, 2008, the court reinstated the action.

On January 11, 2010, Erie filed a motion to enforce settlement and for costs. On February 2, 2010, the court held a hearing, during which the following ensued:

THE COURT: ... All right. I have read the motion with respect to the settlement issue and I still don't know what the settlement was.

Was there a document? Was there something in writing which articulated what the terms of the settlement was when it went to mediation?

[THE ESTATE]: No, Your Honor. That's the problem.

THE COURT: All right. So, [Erie].

[ERIE]: ... There is a writing of an e-mail from plaintiff's own counsel cited in their opposition which indicates the agreement was to dismiss Erie with prejudice....

\* \* \*

THE COURT: Where is there anything in writing that says WSSC, that Erie is out of this case?

[ERIE]: It's in plaintiff's opposition, Your Honor.... He actually cites it in the text.

THE COURT: Once. But then in other places it's a complete opposite.

\* \* \*

THE COURT: Was there something in writing done at the mediation session?

[THE ESTATE]: No, Your Honor.

\* \* \*

THE COURT: So, you have in one sentence, [The Estate has agreed to dismiss the pending lawsuit as to both

WSSC and Erie with prejudice,] is that what you're basing your motion on?

[ERIE]: Well yes, Your Honor, and the whole factual background. That was the agreement. The agreement was to dismiss Erie with prejudice. . . .

THE COURT: Okay. There's nothing in writing in these e-mails are, there's no accord anywhere.

[ERIE]: Your Honor, all we're seeking to enforce is what has been stipulated as to agreed to, dismissing Erie with prejudice. We don't want a release. . . .

THE COURT: It doesn't look like it was agreed to—

The court then proceeded to hear from each party's counsel regarding the mediation. Counsel for the Estate stated that there was no resolution reached at the end of the mediation. When asked whether the claim against Erie was to be dismissed with prejudice, counsel for the Estate stated:

A Well, that was if we settled with WSSC and we did not end up settling with WSSC.

 * * *

Q . . . So, you represented in this e-mail that the Estate has agreed to dismiss the pending lawsuit as to both WSSC and Erie with prejudice, correct?

A On the condition that WSSC paid us money, and didn't require the indemnification clause, didn't require us to pay money to Document Reprocessors, and didn't require us to settle and release with Erie.

Counsel for WSSC related the following:

Q At any point did you insist that Erie had to be part of any release, as a take it or leave it proposition?

A If I recall, it was preferable that we have a release involving all parties, but that, before we could get to that issue that, the settlement negotiations or the settlement terms, the discussions or e-mails back and forth with [counsel for the Estate], it broke down over the indemnification issue. So, we really never got to the issue about Erie and being a part of the release.

Q Okay.

A Or agreement.

Thereafter, the court ruled:

The parties were, was if this case settled between WSSC and the Estate, Erie was going to get out. But since it didn't settle between WSSC and the Estate, Erie is still in it. So there wasn't any blanket agreement to Erie that Erie was going to get out without paying money. Erie was on the coattails of a settlement with WSSC. And since there never was a concrete agreement as they say, the devil is in the details. Erie doesn't get the, doesn't get the benefit. There was never [ ] an agreement that Erie can tag onto.

So the motion to enforce the settlement agreement . . . is denied.

On February 26, 2010, Erie filed this appeal.

### Discussion

Erie argues that "the circuit court erred by failing to enter an order enforcing the parties' settlement agreement and/or permitting the case to proceed to trial after a substituted agreement had been reached." According to Erie, "[t]he plain language of the communications between counsel demonstrates the existence of the agreement," or "substituted contract." Erie further contends that the "representations" made by the Estate constituted a "judicial admission" and, therefore, the court should have dismissed the Estate's claim against Erie.

The Estate responds by arguing that "the basic requirements of a contract were not present to form a settlement contract." Specifically, the Estate avers that "the parties never mutually agreed to [certain] terms, and they never stated with reasonable certainty what they had undertaken." We agree with the Estate.

 "Settlement agreements are enforceable as independent contracts, subject to the same general rules of construction that apply to other contracts." *Maslow v. Vanguri*, 168 Md.App. 298, 316, 896 A.2d 408 (2006) (citations omitted).

" 'As long as the basic requirements to form a contract are present, there is no reason to treat such a settlement agreement differently than other contracts which are binding.' " *David v. Warwell,* 86 Md.App. 306, 310, 586 A.2d 775 (1991) (quoting *Clark v. Elza,* 286 Md. 208, 219, 406 A.2d 922 (1979)). "[W]here the contract is fair, reasonable and certain," a court of equity can decree specific performance. *Excel Co. v. Freeman,* 252 Md. 242, 246, 250 A.2d 103 (1969) (citations omitted). "The interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law, subject to *de novo* review by an appellate court." *Maslow, supra,* 168 Md.App. at 317, 896 A.2d 408 (citations and internal quotation marks omitted).

In *Cochran v. Norkunas,* 398 Md. 1, 919 A.2d 700 (2007), the Court of Appeals stated:

> It is universally accepted that a manifestation of mutual assent is an essential prerequisite to the creation or formation of a contract. *See Creel v. Lilly,* 354 Md. 77, 101, 729 A.2d 385, 398 (1999); *Eastover Stores, Inc. v. Minnix,* 219 Md. 658, 665, 150 A.2d 884, 888 (1959). Manifestation of mutual assent includes two issues: (1) intent to be bound, and (2) definiteness of terms. *See* CORBIN ON CONTRACTS [ ] § 2.8, p. 131. **Failure of parties to agree on an essential term of a contract may indicate that the mutual assent required to make a contract is lacking.** *See Safeway Stores v. Altman,* 296 Md. 486, 489–90, 463 A.2d 829, 831 (1983); *Klein v. Weiss,* 284 Md. 36, 63, 395 A.2d 126, 141 (1978). **If the parties do not intend to be bound until a final agreement is executed, there is no contract.** *See Eastover Stores, Inc.,* 219 Md. at 665, 150 A.2d at 888; *Peoples Drug Stores v. Fenton,* 191 Md. 489, 494, 62 A.2d 273, 275–76 (1948). *See also* CORBIN ON CONTRACTS, *supra* at § 2.9, p. 151; 1 RICHARD A. LORD, WILLISTON ON CONTRACTS § 4:8, p. 302 (Rev. ed.1990); Restatement (Second) of Contracts § 27 (1981).

*Id.* at 14, 919 A.2d 700 (emphasis added).

In this case, no final agreement was ever executed. At the end of the mediation session, the mediator did not prepare

anything in writing that stated the terms to which WSSC and the Estate had agreed. In fact, further discussion regarding outstanding issues continued by way of e-mails between counsel for all the parties. The Estate made clear to WSSC that it would not agree to at least three essential terms included in the proposed written settlement agreement. As such, mutual assent required to make a contract was lacking.

Erie argues that the Estate made a judicial admission when its counsel stated in an e-mail:

The Estate is not releasing and/or settling with Erie. *The Estate has agreed to dismiss the pending lawsuit as to both WSSC and Erie, with prejudice.* The Estate is not giving any sort of blanket release to Erie. The Estate has settled with and is releasing WSSC only.

(Emphasis added).

As counsel for the Estate explained, that statement was made "on the condition that WSSC paid us money, and didn't require the indemnification clause, didn't require us to pay money to Document Reprocessors, and didn't require us to settle and release with Erie."

With the mediation proceedings as a frame of reference, counsel for the Estate was simply listing the specific provisions to which the Estate had agreed and not agreed during the mediation. The Estate agreed to dismiss its case against Erie *only* if it reached a settlement with WSSC.

As counsel for WSSC put succinctly, "before we could get to [issues involving Erie], the settlement negotiations or the settlement terms ... broke down over the indemnification issue." The court correctly concluded that, "since it didn't settle between WSSC and the Estate," Erie could not be dismissed from the case.

Finally, Erie cites *Clark, supra,* 286 Md. at 214–18, 406 A.2d 922, and argues that it entered into a "substituted contract" with the Estate. Thus, Erie contends that the Estate cannot maintain any further action "upon the original claim, and only the new contract can be the subject of any pursuit." This

argument fails because, as we previously explained, no contract of any type was ever formed.

For all of the foregoing reasons, we affirm the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**